## Sheeran, et al. v. Jarboe. et al.

(Decided March 15, 1921.)

### Appeal from Breckinridge Circuit Court.

1. Wills—Undue Influence.—On the issue of undue influence in a will contest, it is often necessary, in weighing evidence, to group together and draw conclusions from a multitude of apparently insignificant things, but which when all considered together tend to show such influence.

2. Wills—Undue Influence.—Evidence examined in a will contest and held to have been sufficient to submit to the jury the issue of undue influence.

W. S. BALL and JOHN P. HASWELL, JR., for appellants.

CLAUDE MERCER and ERNEST WOODWARD for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

In March, 1908, Dennis Sheeran died intestate, a resident of Breckinridge county, leaving a widow, Annorah, four sons, Peter, Dennis, Nicholas and Pat, and two daughters, Mrs. Jarboe and Mrs. Mattingly.

There was no administration upon his estate, which amounted to about $12,000, but by agreement or acquiescence his son Pat took charge of his assets, all of which were personal property except a small home in Hardinsburg valued at about $1,200 or $1,300; and he thereafter paid to each of the children about one thousand dollars, and to the widow between five and six thousand dollars.

A short time after the death of Dennis Sheeran his son Nicholas died and left as his only heir at law an infant son, Daniel.

Some years later there was apparently some dissatisfaction upon the part of the two sisters with the settlement that had been made by Pat, and early in 1915 Mrs. Mattingly requested the county judge to appoint an administrator of her father's estate, and accordingly such an administrator was appointed on the 29th day of March, 1915, and two days thereafter, on the 31st day of March, Mrs. Annorah Sheeran executed her will, by the terms of which she gave all of her property, except a small devise to her church, to her three sons, Peter, Dennis and Pat, but made no provision for either of her two daughters or for the infant son of Nicholas.

Mrs. Sheeran died in the fall of 1917, and thereafter the paper was probated in the county court as her will, and from that order of probate Mrs. Jarboe, Mrs. Mattingly and the guardian of the infant appealed to the circuit court, seeking to have the paper probated as the will of Annorah Sheeran declared not to be her will because, as alleged, she was incompetent at the time the same was executed, and because her sons, the devisees therein, had procured her by undue and improper influence to execute the same.

Upon a trial in the circuit court a jury found against the will upon the ground of undue influence, the court having refused to submit the question of testamentary capacity because of the insufficiency of the evidence on that issue; and this is an appeal by the executor and devisees from a judgment entered on that verdict.

The only ground relied on for a reversal is that the verdict was contrary to the evidence and not sustained by it.

The plaintiffs' evidence is that from the year 1911 until Mrs. Sheeran's death her son Pat lived with her at her home; that he had absolute control of her business affairs and attended to everything for her; that she was a very domestic woman and took no interest in the management of her business; that she was easily influenced, and that her sons, especially Pat, had great influence with her and, as testified to by one of the daughters, could get her to do anything; that she had never had any serious differences with any of her children and appeared to love them all the same; that her two daughters, who lived a few miles away, came to see her as often as they could considering their family duties; that neither of her daughters knew until after her death that she had made a will, when for the first time they were so informed by their brothers at a family conference; that at the time of the execution of the will her age was between 70 and 75; that she and her husband had both been born in Ireland and married when young and had afterwards come to this country and consequently her exact age was not known.

The two daughters testified that at the family conference a few days after the death of their mother their three surviving brothers were all present and informed them that their mother had made a will, and said: "We had this will made in order to cut Daniel (the infant grandson) out, but with the understanding that you two sisters would share equally with us;" that they said it would look strange to have left Daniel out alone and so they also left the two daughters out so that it would not look so bad, but that it was understood that the daughters would get their share; and that Daniel, the grandson, was left out, the brothers claimed, because he already had plenty and had gotten through his father, Nicholas, more of Dennis Sheeran Senior's estate than any of the others.

This is the positive testimony of both of the sisters, although it is only fair to say that the three brothers deny

this, but at least one of them admits that they did say to the two sisters on the occasion mentioned that if they would institute no contest or legal proceeding they would see they got their proper share of their mother's estate.

In addition to all these circumstances it is in evidence that a lawyer wrote the will of Mrs. Sheeran without ever having talked to her and from a written, signed memorandum brought to him by Pat Sheeran, and that after the will was executed it was brought back to him by Pat Sheeran for safekeeping, and that he prepared the will in accordance with that memorandum which Pat brought him.

It further appears that Pat was present when the will was executed and procured both of the attesting witnesses to come to the home and attest it. It furthermore appears that in some way the old lady had become convinced that she had already provided for her daughters and so told each of the attesting witnesses, when, as a matter of fact, there is no contention here that either she or her husband had ever provided for either of the daughters to any greater extent than they had for their sons.

Evidence of undue influence like evidence of fraud is difficult sometimes to produce. Persons designedly going about the perpetration of a fraud or the exercising of unfair influences upon others with a view of controlling the disposition of their property, do not work openly, and for that reason it is necessary in weighing evidence in such matters to group together and draw conclusions from a multitude of apparently insignificant things, but which, when all are considered together, tend to show the iniquitous purpose and its accomplishment. Rhea v. Madison, 151 Ky. 262; Sisby v. Shrader, 104 Ky. 15; Fry v. Jones, 95 Ky. 149.

In this case we have, in addition to certain circumstances and conditions surrounding the parties, which are of themselves, to say the least, suspicious, the direct, positive statement of two witnesses that their brothers, the beneficiaries under their mother's will, not only admitted but voluntarily stated to them that they had caused their mother to execute this will for the purpose of disinheriting the infant son of their deceased brother, and with the distinct understanding that the two sisters should be given by their brothers their shares in the estate. In other words, it was a conspiracy to deprive the infant of his share in his grandmother's estate upon the pretext that

they would do justice to their sisters, and after this was apparently accomplished, they refused to do for their sisters what they had agreed to do.

Another most enlightening circumstance in the record is that the old mother never thought it was necessary to make a will disinheriting her two daughters and her grandson until two days after one of the daughters had caused an administrator of her deceased husband's estate to be appointed so that her son Pat, with whom she lived, might be required to account for all of his father's property which had passed through his hands.

With the positive evidence of the two women that the beneficiaries made the statement referred to three or four days after their mother's death, and the other circumstances pointing to the exercise of unfair influence, the court properly submitted that issue to the jury.

The judgment is affirmed.