## Clore, et al. v Argue, et al.

(Decided March 19, 1926.  Modified April 30, 1926.)

## Appeal from Henderson Circuit Court.

1. Witnesses—Contestants Held Bound by Contestee's Answers on Cross-Examination on Collateral Matter.—Where contestee, who made deposition as to testamentary capacity of testator, in will contest, was cross-examined as to why she took position she did in such litigation, contestants were bound by her answers, and cannot contradict her, since questions were on collateral matter.

2. Evidence.—In will contest, evidence consisting of conclusions of witnesses was properly excluded.

3. Wills—Undue. Influence is Such as Destroys Free Agency of Testator, and Does Not Include that Obtained by Kindness or Appeal to Feelings, Understanding, or Affection which Does Not Destroy Free Agency.—Undue influence is such as destroys free agency of testator in disposal of estate and constrains him to do what he would not do in free exercise of own judgment, and does not include reasonable influence obtained by kindness or appeal to feelings, understanding, or affections not destroying free agency.

4. Trial.—Refusal of correct instruction as to undue influence held not error, where another correct statement of the law on undue influence had been given.

5. New Trial.—Remark of juror, in will contest, that "no will ought to be set aside if the testator was of sound mind when it was executed," was not ground for new trial, where it was merely remark about wills generally.

JOHN C. WORSHAM for appellants.

MALCOLM YEAMAN (YEAMAN, PENTECOST & YEAMAN of counsel), for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Ella Clore Barrett, in the sixty-first year of her life, died in Henderson, Kentucky, on November 3, 1922. She left no issue, and her father and mother were dead. Under the statutes, her estate would have been divided into nine shares, one-ninth would have gone to a surviving brother, four-ninths would have gone to surviving sisters, two-ninths would have gone to the issue of two deceased brothers, and two-ninths to the issue of deceased sisters.

She left a paper executed July 23, 1913, devising practically her entire estate to her niece, Ella Nosworthy Argue. This paper was duly probated as her will, and

thereafter this contest, begun by some of the heirs of Mrs. Barrett, was heard, and the will sustained.

The motion of contestants for a new trial having been overruled, they have appealed, and are asking a reversal of the judgment upon the grounds filed with their motion, which we shall discuss in the same order that they have presented them. The deposition of Annie C. Posey, one of the contestees, was read. In that deposition she testified about the health, mental strength and vigor and testamentary intentions of Mrs. Barrett. In her cross-examination by contestants, we find this:

"Q. Did you tell Alves Clore, in the presence of his wife, when he was talking to you about this will contest, that you thought you ought to have your share in her estate, but that you were afraid to go in to it? A. I did not.

"Q. But you were afraid to go into the suit because you were dependent on the Nosworthys because of what you got from them? A. I did not, most positively.

"Q. Did you not say on that occasion that you were dependent on the Nosworthys and your son Charlie, and that Charlie made very little and you depended on what the Nosworthys gave you and were afraid you would lose that if you went into the suit? A. I did not, I did not."

There was nothing brought out by this bearing upon the testamentary capacity of Mrs. Barrett or any wise connected with the validity of the paper in question. These questions are directed to why Mrs. Posey took the position she did in this litigation. That was a collateral matter, and contestants were bound by her answers, and can not contradict the witness. C., N. O. & T. P. Ry. Co. v. Prewitt's Admr., 203 Ky. 147, 262 S. W. 1; Kennedy v. Commonwealth, 14 Bush 340.

Complaint is made of the action of the court in excluding portions of the evidence of the witnesses, J. O. Clore, S. J. Howard, Mrs. Knowlson, T. C. Witherspoon, Miss Yeager, Mrs. Bishop and Miss Thoene, but this position is not well taken as the excluded matter in each instance was merely a conclusion of the witness.

Contestants' next and chief complaint is directed to the four instructions given and the three they tendered, which were refused. The first two instructions in each

set are practically the same, but contestants most strenuously insist the court should have given this:

"Z.   Undue influence as used in these instructions is such an influence as obtains dominion over the mind of the testator to an extent that destroys free agency on his part in the disposal of his estate and constrains him, in respect thereto, to do that which he would not have done if left to the free exercise of his own judgment; and it is not material when this influence was exerted; if it was present and operating on the mind of the decedent at the time the paper read in evidence was executed."

They insist that is a more correct statement of the law than the statement contained in the two following, which the court gave:

"c.   Undue influence is such an influence as obtains dominion over the mind of the testator to an extent that destroys free agency on his part in the disposal of his estate and constrains him in respect thereto to do that which he would not have done if left to the free exercise of his own judgment.   But any reasonable influence obtained by acts of kindness, or that appeals to the feelings, or to the understanding, or to the affections, and not destroying free agency, is not undue influence.

"d.   If you believe from the evidence that said Ella Clore Barrett was of unsound mind at the time of the execution of said paper or that its execution was procured by undue influence, you should find said paper not to be the will of said Ella Clore Barrett."

We like the idea contained in the latter part of the tendered instructions, but we regard the instructions given as containing a better definition of undue influence, but both are correct statements of the law, and are not conflicting. What we have said finds support in the case of Overall v. Bland, 11 Ky. L. R. 372, 12 S. W. 273, which record we have examined and find that the instructions given and the instruction refused in that case very similar to the instructions given and refused in this case.   The reasoning in the Bland case applies with conclusive force to the case before us.   We can find no error in the giving or refusing of instructions.

The final complaint of contestants is that one juror on his *voir dire* said that he had never discussed the case, and had no opinion, yet after the trial, contestants learned, so they establish by affidavits, that he had discussed the case with a juror who served on a former trial, and that he then said: "No will ought to be set aside if the testator was of sound mind when it was executed." There is no showing that the juror was then expressing an opinion about the will involved in this case. It was a mere casual remark about wills in general, and of such we said in N. C. & St. L. Ry. Co. v. Henry, 168 Ky. 453, 182 S. W. 651:

> "Casual remarks made by men as to what they thought ought to be done or ought not to be done in certain classes of cases is not such misconduct as will authorize the granting of a new trial, when it does not appear that what they said had any reference to the case in which they sat as jurors."

We find no prejudicial error in the record, and the judgment is affirmed.