## Stoll, et al. v. Stoll's Executor.

(Decided March 26, 1926.)

### Appeal from Oldham Circuit Court.

1. Wills.—Evidence held insufficient to take to jury question of undue influence in procurement of will.

2. Wills—Presumptions are in Favor of Probated Will, which Will Not be Set Aside Except on Sufficient Rebuttal Evidence of Mental Incapacity or Undue Influence.—Every presumption is in favor of probated will, which will not be set aside or adjudged invalid, except on evidence sufficient to overturn such presumptions and show mental incapacity or undue influence.

3. Appeal and Error—Sustaining Objection to Will Contestants' Question to Their Witness as to Prior Contradictory Statements Held Not Prejudicial, Since Statements would Not have Been Competent as Substantive Evidence (Civil Code of Practice, Section 596).— Where will contestants' evidence was otherwise insufficient to go to jury, sustaining objection to question asked contestants' witness by their counsel as to whether she had not made certain statements, which she had indicated she did not remember, was not prejudicial, since such statements would not have been competent as substantive evidence, but only to impeach witness or to contradict her under Civil Code of Practice, section 596.

EDWARDS, OGDEN & PEAK and ROBERT T. CROWE & WM. J. CROWE for appellants.

J. BALLARD CLARK, HUMPHREY, CRAWFORD & MIDDLETON, EUGENE HUBBARD and MARVIN H. TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This appeal is from a judgment of the Oldham circuit court, sustaining the will of Charles R. Stoll, contested by his nephew, Clarence Stoll, and one or more

nieces, on the grounds of mental incapacity and undue influence. At the conclusion of the evidence for the contestants the court, on motion, directed a verdict for the propounders of the will, and the contestants appeal.

The will is dated November 12, 1921, and was probated on the 21st day of January, 1924. After providing for the appointment of an executor the contested paper reads: "And direct him to sell and dispose of all my property and divide my entire estate among the following named persons in the following named proportions:

"To Mrs. Carrie Russell, now living at 5903 Kenwood avenue, Kansas City, Missouri, twenty thousand dollars ($20,000.00).

"To Carl Russell, her son, twenty thousand dollars ($20,000.00).

"To Leigh R. Stoll ten thousand dollars ($10,000.00).

"To Anna Barnett, my niece, twenty thousand dollars ($20,000.00).

"To Edith Dake, twenty-five hundred dollars ($2,500.00).

"To Minnie Moore Taylor, of Cincinnati, twenty-five hundred dollars ($2,500.00).

"To Mattie Fritsche twenty-five hundred dollars ($2,500.00).

"To Mary Ransetter five hundred ($500.00) dollars.

"To Dollie Miller five hundred dollars ($500.00.)"

Then follow certain limitations upon some of the foregoing bequests. The sixth clause of the will reads:

"I do not overlook my brother, Alfred Stoll, or my nephew, Clarence Stoll, or my nieces, Bassie Head or my niece Mary Craig Stoll or my niece Virgie Kerlin in making this will, but for reasons that seem sufficient to me expressly exclude them from participation in my estate."

Appellant, Clarence Stoll, is the same person mentioned in the clause above quoted, and he and Virgie Kerlin and other children of his deceased brother, Alfred Stoll, were contestants and are now appellants. In the pleadings the contestants averred that the testator died childless; but this averment was denied by the answer, which pleading affirmatively alleges that the testator was

survived by a child, without naming it. From the record it appears that Carl Russell, one of the beneficiaries under the will, is an illegitimate son of the testator, and that Mrs. Carrie Russell, mother of Carl, was one of the early friends of the testator. Years ago she moved to Kansas City with her son and he was reared there. She died before the death of the testator.

Appellants insist that the will is an unnatural one, being the result of mental incapacity; that this incapacity is principally manifested by lack of regard for his nearest of kin, the natural objects of his bounty, and by moral depravity, evidenced by cohabitation with different women at different periods in his life. Appellants' chief reliance, however, is upon undue influence exercised by Mrs. Leigh Stoll, divorced wife of the testator. Evidence of mental incapacity on the part of the testator is wanting, and in brief of counsel for appellants it is tacitly admitted that there is not sufficient evidence of testamentary incapacity to have warranted the submission of the case to the jury, and following that admission counsel in brief says: "Yet, nevertheless, the question of undue influence was, we think, more than sufficiently established and the question of undue influence should have been submitted to the jury." The evidence upon this subject, if evidence it may be called, is indeed meager. It is chiefly rested upon the theory that Leigh Stoll, divorced wife of the testator, who lived with him at the time of his death, and had so lived at intervals for many years before his death, was in position to and may have exercised undue influence over him in the execution of the will, it being asserted that she was living with him in concubinage with the design and purpose of obtaining, through a will, a share of his estate, and further that she on divers occasions urged testator to make a will. To prove this contention appellant introduced evidence tending to show that Mrs. Leigh Stoll resided at the residence of testator, waited on him and cared for him in his last days, and frequently berated his relatives. Appellant, Clarence Stoll, himself testified that his uncle manifested great affection for him until the testator married Mrs. Leigh Stoll, and from that time on his affection waned until his uncle appeared to entertain a decided aversion toward him, but he admits in his testimony that he does not know whether this aversion which his uncle entertained for him was the result of anything done or said to him by Mrs. Leigh Stoll. All the evidence shows, however, that appellants and the other

collateral kin of testator gave him but little attention in his declining days. He was sick for several years before his death and attended mineral springs at different places throughout the country in an effort to recover his health. During this time Mrs. Leigh Stoll was his house-keeper, nurse and constant attendant, but the nephews and nieces seemed never to have rendered him any assistance during these trying years. Indeed, appellant, Clarence Stoll, who had been favored in many ways by his uncle, the testator, declined to pay rent for the use of the farm which his uncle had allowed him to occupy. This incensed the testator, who insisted upon Clarence paying a reasonable rental. On Clarence declining to do so the testator instituted an action to recover of him a little more than $4,000.00, and became very bitter at Clarence because of this litigation. The testator also had a lawsuit with his brother, Alfred, father of the contestants, over the settlement of accounts, and became very bitter at his brother, Alfred, and this, it may be, was the influence that kept the testator from giving to Alfred or to Alfred's children any part of his estate, and induced him to write into his will the sixth clause above copied, cutting off his brother Alfred and his children.

It is common knowledge that a family lawsuit is generally more bitter than almost any other kind of litigation and that brothers and members of the same family who litigate questions between themselves become estranged and are not thereafter reconcilable. It does not, however, necessarily prove that one is of unsound mind or mentally incapable of making a will disposing of his property. We know of no case so holding. There is no evidence tending directly to prove that Mrs. Leigh Stoll, either directly or indirectly, attempted to control the testator in the execution of his will. True, she received a bequest of $10,000.00 out of an estate of more than $100,000.00, but it would seem that if she was able to have controlled the testator in the making of his will and in fixing the objects of his bounty, she could and would have procured for herself a more liberal allowance, seeing that other persons no more closely related to testator than herself received $20,000.00. Reduced to its last analysis, it may be said that the evidence adduced at the trial by appellants to show undue influence amounted to no more than a showing that Mrs. Leigh Stoll, divorced wife of appellant, was in position to and had opportunity to have attempted to influence the testa-

tor in the making of his will and the distribution of his property therein, but it does not show that she or any other person actually exercised a controlling, or any, influence over the testator in the making of the will or selection of the beneficiaries or the fixing of the bequests, either directly or indirectly, in whole or in part. As said in Frazie's Exors. v. Frazie, 186 Ky. 613, "Every presumption is in favor of the probated testamentary paper, and such paper will not be set aside or adjudged invalid except on evidence sufficient to overturn such presumptions and to show either mental incapacity on the part of the testator or the exercise of undue influence over him."

In Robinson, et al. v. Davenport, et al., 179 Ky. 598 we held that to show undue influence sufficient to invalidate a will there must be not only an opportunity to exercise such influence or a possibility that it was exercised, but there must be some fact or circumstance at least tending to show that it was actually exercised. And in Stutiville's Executors v. Wheeler, 187 Ky. 361, it was said:

"We have written in similar will contest cases that undue influence can only be established by evidence showing that such influence was exercised, and it is not sufficient for the contestant to show that there was opportunity to exercise undue influence or that there was a possibility that it was exercised."

Again, in the case of Brent v. Fleming, 165 Ky. 356, it was said:

"We have frequently written that it is not sufficient to show that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised, but some evidence must be adduced showing that such influence was actually exercised. Crump v. Chenault, 154 Ky. 187, 156 S. W. 1053; Childers' Exor. v. Cartwright, 136 Ky. 505, 124 S. W. 804. And by evidence is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof, or having fitness to induce conviction. Clark v. Young's Extx., 146 Ky. 377."

In the case of Gay v. Gay, 183 Ky. 238, we said:

"The fact that undue influence, like fraud, is usually concealed by the party asserting it, and

surreptitiously applied, more often than otherwise, is not overlooked, but, there must be some evidence that such influence was exerted and existed. Crump v. Chenault, 154 Ky. 187; Jones v. Beckley, 173 Ky. 840; Brent v. Fleming, 165 Ky. 356; Broaddus v. Broaddus, 10 Bush 299; Cecil's Exors. v. Anhier, 176 Ky. 198; Turley v. Johnson, 1 Bush 117; Childer's Extx. v. Cartwright, 136 Ky. 505. The mere opportunity to exert an undue influence is not sufficient, as the party accused may have done so or may not have done so.''

As there was no evidence of probative value tending to show that the testator was mentally incapable of knowing his estate and realizing the objects of his bounty and his duty to them, and there was an equal lack of evidence to show the exercise of undue influence upon and over him in the making and execution of the will, the trial court properly directed the jury to find and return a verdict for the propounders. It is insisted for appellants, however, that the court erred in sustaining an objection to questions propounded by them to Mrs. Anna Barnett, a witness called by them, who was made a party contestee in this action and whose name was later stricken as such, on the ground that she was interested as contestee, her answers being put in the record by avowals. It covers two or three pages, and is the substance, as appellant contends, of what she said in the law office of counsel for contestants when they were employed to prosecute the contested cases, and which was intended to contradict and impeach the witness. Although they had been treating her as contestee appellants called Mrs. Barnett as a witness, but when she indicated she did not remember certain conversations and statements made counsel for appellants asked her in substance if she had not made certain statements in their law office upon a named occasion. To this the contestee objected and the court sustained the objection; thereupon counsel for appellants made avowal of what the witness would state, saying in substance that the witness had at the time of the employment of counsel in their office, made certain statements showing incapacity of testator in answer to questions and that the same were taken down in shorthand and transcribed by a competent stenographer. It is a well established rule that a party may not impeach his own witness, but may contradict him. The Civil Code so provides in section 596. We have held in a number of cases that where a party

introduces a witness to prove certain facts and the witness states that they do not exist, or did not transpire, he cannot then introduce other witnesses to prove that the witness had said to them that the facts he had inquired about did exist or transpire. While a witness in a Commonwealth case may be contradicted by proving that he, at another time and place, made a different statement from that contained in his present testimony, in such case it becomes the duty of the court to admonish the jury that the evidence thus introduced is only admissible for the purpose of impeaching the credibility of the witness, if it does so impeach him, and for no other purpose. So, if a party call a witness and the witness makes a statement different from that which the party expected to prove by him, he may contradict the statement by showing, if he can, that the witness on a different occasion stated the contrary; but if that be done the court should admonish the jury that the statements made by the witness on the former occasion shall not be considered as substantive evidence for the party introducing him, but only for the purpose of contradicting or impeaching the witness, if it does so do and for no other purpose. If the witness, Mrs. Barnett, made the statement contained in the avowal at the time and place mentioned by counsel, it could not have been proven by appellants as substantive evidence to support their cause, but only to contradict or impeach the witness in her evidence at the trial and for no other purpose. So, in destroying such testimony as she may have given at the present trial by evidence of statements made by her at other times appellants could not in any way strengthen their case so as to make the evidence stronger for appellants and to entitle appellants to a submission of the case to the jury.

Entertaining these views, it is the opinion of the court that the lower court did not err in sustaining the motion for a directed verdict in favor of the propounders of the will.

Judgment affirmed.