## Seals v. Seals.

(Decided March 26, 1926.)

### Appeal from Kenton Circuit Court.

1. Wills—"Undue Influence" is Such as Destroys Testator's Free Agency and Operates on His Mind at Time he Executes Paper.— Undue influence is such as destroys testator's free agency, constraining him to do against his will what he would otherwise refuse to do, whenever exerted, if operating on testator's mind at time he executes paper, but any reasonable influence by acts of kindness or appeals to feelings or understanding, not destroying free agency, is not undue influence.

2. Wills—Testimony of Undue Influence, to Invalidate Will, Must be Such as to Authorize Jury to Infer that Undue Influence was Actually Exercised.—For undue influence to invalidate will, there must be not only opportunity to exercise such influence or pos-

sibility that it was exercised, but testimony must be such as to authorize jury to infer that it was actually exercised.

3. Wills—Evidence Held Insufficient to Warrant Conclusion that Testamentary Paper was Not Testator's Last Will Because of Undue Influence.—Evidence showing merely that testator's wife had opportunity to discuss making of will with testator or to attempt to exercise influence over him, but not proving that she ever talked to testator about making will or attempted to influence him, held insufficient to warrant jury in concluding that testamentary paper was not last will of testator because of undue influence.

C. B. SHIMER and GEORGE SLALINE for appellant.

JOHN H. KLEETE and STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant, Daisy Seals, was the second wife of George R. Seals, whose last will is now in contest, and appellee, Walter Seals, is the only child of the testator now living. The will bears date June 12, 1922, and the testator died on the 29th of December, 1924. Walter, a man of mature years, is not the son of appellant, his mother being dead. The second item of the will of George R. Seals reads:

"2nd. I give and bequeath unto my wife, Daisy Seals, all my money and personal property of every description and I desire that she may have full use and benefit of same. I desire that she be given exclusive use and benefit of my real estate at No. — West Oak street, Ludlow, Ky., during her life, and after her death I desire that my real estate be given to my son, Walter Seals. Should my son Walter Seals die first, then I desire that his children be given my real estate, share and share alike."

Appellant was also made executrix without bond. The testamentary paper was witnessed by Samuel Bodkin and his wife, Mrs. Samuel Bodkin. Before his marriage to appellant, the testator made a will giving the son, appellee, Walter Seals, the property.

The son instituted the contest on the ground of want of mental capacity on the part of the testator and of undue influence exercised over him by appellant, testator's wife. Evidence of mental incapacity was lacking and that ground of contest has been wholly abandoned,

but it is now insisted by contestee that the testator was unduly influenced in the making of the will.

The due execution of the will was proven by attesting witnesses called by appellant, then the propounder. These witnesses stated that the will was signed by testator at the home of the witnesses in Covington; that it was brought there by Mr. and Mrs. Seals, who came together; that no one was present at the signing except the testator and appellant and the two witnesses, Mr. and Mrs. Bodkin; that the will was typewritten and ready when brought to the Bodkins home by appellant and the testator. The witnesses did not know who had prepared the will; that the witness, Mr. Bodkin, had on an occasion some seven or eight years before, witnessed another will for the testator; at that time the testator's first wife was living. The present will was signed and witnessed on Sunday afternoon; that both witnesses read the will through in the presence of the testator before he signed it and before it was witnessed by them; that the appellee, Walter Seals, was not present; that the testator's mind was good, he appearing to be in the same mental condition as on previous occasions; that he was somewhere in the seventies; that the appellant, who was present at the signing of the will, "never said a word." The testamentary paper was prepared by testator's banker, Mr. James A. Stephens, of the First National Bank of Ludlow, Ky. He had known testator for ten or fifteen years. Mr. Stephens testified that Mr. Seals was "accustomed to come to our bank and he came into our bank and asked me if I could draw him up a will; I said yes, I can; he said, well, all right; I said, what do you want in it, and he told me, and of course, I took it down in lead pencil just what he requested in his will." This was done at the bank when no one was present except the testator and the banker. Later he made a rough draft of the will and took it to the house of the testator and read it to him and after finding it satisfactory to the testator he went back and wrote it out on a typewriter and then took it to the testaor's house and read it to him; that when he went to the house appellant was in the room with testator, but she left the room and went to another and remained while the banker discussed the will with the testator; that appellant was not present during the discussion; that the mind of the testator was good at that time. The banker further testified that the testator kept an account at his bank.

Dr. J. G. Slater was called by the propounders and testified that he was the family physician of the testator and treated him in his last illness; that he was only sick three or four days before his death; that he had known him about eight or nine years and was a neighbor; that he did not notice anything wrong with his mind. Other witnesses testified to the sound mental condition of the testator.

At the close of the evidence for the propounder appellee moved for a directed verdict in his favor, but this motion was overruled by the court. Thereupon appellee, Walter Seals, took the stand and testified he was the son of the testator, aged forty-three years, and had been married for twenty-seven years. In answer to the question as to what business the testator followed, the witness said: "Well, he followed mill work all the time; that the testator was going on seventy-five at the time of his death; that the testator earned about $275.00 per month and had been receiving that income for some years; that he owned a home and lot and another lot; that the testator had a bank book showing that he had a little over $6,000.00 and four shares of railroad stock and some liberty bonds; that this money and property had been saved up by appellee's mother and the testator while they lived together; that both were good workers and careful savers; that appellant was a widow before she married the testator in 1922; that appellant was a Mrs. Hodges before her marriage to the testator; that she came to the home of the testator as a housekeeper in January and married the following May, 1922, and the will is dated June 12, 1922, and the testator died December 29, 1924; that appellant kept house and did the cooking and cleaning but he did not know what she received for her services; that after she married the testator and had lived with him for a short time he told the witness and others that she did not sleep with the old man and that the old man slept in the front room and she slept in the back room; that appellant told him that the old man was old and that if he was younger like the rest of the people they could think a lot more of each other; that after he married appellant testator bought an automobile, but there was a change in the custom of the testator visiting after he married appellant; that before he married her he visited and was friendly with his children, but that after he was married he did little or no visiting, and appellant did not appear friendly to testator's children when they came to the

house; that appellant claimed she did not know anything about a will immediately after the death of the testator; that after the death of the testator appellee called at the house and appellant told him she did not know about a will and said, "Well, tomorrow is New Years and we will go through his papers and see if we can find a will, and if we cannot find a will we will go up to the bank and open up the deposit box;" that on the next day he went to the house but could not find appellant and waited a while and went away and when he came back and found appellant she told him that she had been up to the safety box and found the will and that was the first that appellee knew of the will; that testator made a will before the death of his first wife, the mother of appellee. Other witnesses were called by the contestant to prove undue influence, but the evidence thus obtained amounted to nothing more than mere statements made by appellant, in effect that the testator was a lone man and she was a lone woman and that she thought they ought to get married, and that soon thereafter they were married, and that the will was made shortly following the marriage. Appellant was also called as a witness by the contestant and examined and cross-examined at great length. Her testimony is not harmonious but rather contradictory. There are several unsatisfactory statements contained in it. She testified that she did not know there was a will until the death of the testator and then admitted that she knew that a will was being made at the time it was made, but said she was not present and did not see the paper, but later said she went with the testator to the Bodkin home to get the witnesses to sign it; but of course she denied ever discussing the will with the testator before it was made and denied having influenced or attempting to influence him in the making of the will.

The court instructed the jury to find the paper to be the last will of George R. Seals, unless it should believe from the evidence that the execution of the paper by George R. Seals was procured by undue influence, in which event the jury were directed to find the paper not to be his true will. The second instruction defined "undue influence." The jury returned a verdict finding the paper not to be the last will of George R. Seals, upon which judgment was entered, and it is from that judgment that this appeal is prosecuted.

The widow, now appellant, contends that after due execution of the will is proven the burden of showing

that the instrument is invalid because procured by the exercise of undue influence is upon the contestants; that this must be shown by evidence at least tending to establish that undue influence was exercised upon the testator, and it is not sufficient that it be shown that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised. Some evidence must be adduced showing that such influence was exercised. "Undue influence" is any influence obtained over the mind of the testator to such an extent as to destroy his free agency and to constrain him to do against his will what he would otherwise refuse to do, whether exerted at one time or another, directly or indirectly, if it so operated upon his mind at the time he executed the paper. But any reasonable influence obtained by acts of kindness or by appeals to the feelings or understanding, and not destroying free agency, is not undue influence." Cecil's Exors. v. Anhier, 176 Ky. 198, 219; Langford's Exor. v. Miles, 189 Ky. 515, 225 S. W. 246; Schrodt's Exors. v. Schrodt, 181 Ky. 174, 180 S. W. 203.

"One possessing testamentary capacity and not unduly influenced, may dispose of his property by will in any way he pleases, even though it does not accord with the views of the members of the jury as to right or justice and appears to be unequal or unfair to the devisees. Cecil's Exors. v. Anhier, 176 Ky. 198, 195 S. W. 837."

"Undue influence means a wrongful influence, and influence secured through affection and acts of kindness is not wrongful, therefore, not such as would justify a court of equity in setting aside a conveyance." Chrisman v. Quick, 174 Ky. 845, 193 S. W. 13.

"Mere general or reasonable influence over the testator is not sufficient to invalidate a will; to have this effect, the influence must be undue, that is, not right or not proper." Huff v. Woosley, 184 Ky. 605, 212 S. W. 597.

The foregoing rule, while thoroughly established as shown by the number of cases cited by this court, is hardly better fixed in the law of our state than the rule which requires evidence of the exercise of undue influence over the testator in order to invalidate the instrument. In a number of cases we have said that to show undue influence sufficient to invalidate a will there must

be not only an opportunity to exercise such influence or. a possibility that it was exercised, but the testimony must go further and show facts and circumstances from which the jury would be authorized to infer it was actually exercised. Brent v. Fleming, 165 Ky. 356; Wigginton's Exor. v. Wigginton, 194 Ky. 385, 239 S. W. 455.

The evidence introduced by the contestants in the instant case was not of such probative value as to warrant a jury in concluding that the testamentary paper offered was not the last will and testament of the testator, for it went no further than to prove that appellant, wife of the testator, had opportunity to discuss the making of a will with him and to offer suggestions or to attempt to exercise influence over him in the making of the will, but did not prove that she ever talked to him about the making of the will or attempted in any way to control or influence him in the making of the testamentary paper; while there was a scintilla of evidence supporting the contestant, it was not sufficient to support the verdict of the jury, finding the paper not to be the will of the testator, and for this reason the judgment must be reversed and the cause remanded for new trial not inconsistent herewith.

Judgment reversed.