# Mossbarger v. Mossbarger's Administratrix.

(Decided June 21, 1929.)

JAMES & JAMES and J. E. WISE for appellant.

LAYMAN & LAYMAN and FAUREST & FAUREST for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Henry Mossbarger died August 27, 1927, and thereafter an instrument of writing purporting to be his holographic will was admitted to probate. It devised to testator's son, Griffin W. Mossbarger, the sum of $5,000 and the balance of the estate to his wife, Agnes Mossbarger. The son prosecuted an appeal to the Hardin circuit court, contesting the will on the ground of testamentary incapacity and undue influence. The case was submitted to the jury on the issue of testamentary capacity alone. The jury found a verdict in favor of the will, and the contestant has appealed.

Contestant's complaint in this court is that a peremptory instruction to find against the will was refused; that the court did not submit to the jury the issue of undue influence; and that the court refused a new trial requested because of misconduct upon the part of two jurors that sat in the trial of the case.

1. It is said that the estate of Mossbarger amounted to over $60,000, of which he gave only one-twelfth to his son, and the remainder to his third wife, whom he had married only a month before the will was executed, and only a few months before his death. It is insisted that these facts made the will unnatural and unequal, and placed upon the propounders the burden of proving some reasonable explanation of the inequality, and, since that burden was not met, the will should have been peremptorily rejected. The argument proceeds upon a misapprehension of the rule and the facts of this case. The rule is that an unnatural, unreasonable, and unjust disposition of the testator's estate affords some evidence of testamentary incapacity, and, in connection with other circumstances, may be sufficient to take a case to the jury, Helm's Guardian v. Neathery, 226 Ky. 42, 10 S. W. (2d) 474; Mullins v. Mullins, 229 Ky. 103, 16 S. W. (2d) 788, but that rule has no application where substantial provision is made by the will for a child, and the remainder of the estate is devised to the surviving wife. Indeed, it is not uncommon, unreasonable, or unnatural for a hus-

band to devise all of his property to his wife. Creech v. Creech, 208 Ky. 845, 272 S. W. 36; Seals v. Seals, 213 Ky. 779, 281 S. W. 982. It follows that there is no merit in the contention that the court should have directed a verdict against the will.

2. The next insistence is that the court committed error in refusing to instruct the jury, as asked by appellant, upon the issue of undue influence. The scintilla rule applies in will contests as in other civil cases (Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948; Holliday v. Holliday, 161 Ky. 500, 171 S. W. 156), and, if there was any evidence from which the jury could infer the existence of undue influence in the procurement or making of the will, the court should have instructed thereon. There was no direct evidence of undue influence. The will was dated February 25, 1926, and was written by the testator shortly after his last marriage, which occurred in January, 1926. It was presented to the cashier of a bank in which Mr. Mossbarger was a director in May, 1926, with a request that he attest it as a witness. The will was then left at the bank. Its provisions were not at variance with any fixed or declared intention of the testator. It did not divert the estate from the two persons who would have shared in it but for the will, although the division between them was different than would have been made under the statute of descent and distribution. No importunity by the beneficiary is shown. There was no denial of opportunity for the other members of the family to communicate or associate with the testator. The will was made deliberately while the testator was able to go about and attend to his business. It was not a deathbed devise. The testator had ample opportunity to reconsider and revoke the will if it did not express his desires. He was not only able to read, but wrote the will in a clear and well-expressed form. His use of the title "Esquire" after his name in the introductory part of the will was insignificant.

It is argued that the wife had an opportunity to exercise undue influence over her husband from the time of their marriage in January until the will was written; that there is some evidence from experts that Mr. Mossbarger was susceptible to influence, and that the resulting will justifies the inference that the sinister power was exerted. Undue influence is such overpowering of the testator as destroys free agency, and constrains ac-

tion which would not otherwise be taken. If such sinister influence is exerted directly or indirectly upon the testator's mind, bringing about the execution of the purported will, the instrument is not regarded as the act or will of the testator. Undue influence is necessarily a wrongful influence that destroys liberty of action. Reasonable influence, acquired by kindness, good treatment, and affection, is not unfavorably regarded, and testamentary rewards to those having such influence are not interdicted. Seals v. Seals, 213 Ky. 779, 281 S. W. 982. Many opinions may be found applying the principles stated to varying situations presented by the peculiar circumstances of the particular cases. Fry v. Jones, 95 Ky. 148, 24 S. W. 5, 15 Ky. Law Rep. 500, 44 Am. St. Rep. 206; Lischy v. Schrader, 104 Ky. 668, 47 S. W. 611, 20 Ky. Law Rep. 843; Johnson's Adm'r v. Johnson, 45 S. W. 456, 20 Ky. Law Rep. 138; Murphy's Ex'r v. Murphy, 146 Ky. 399, 142 S. W. 1018; Meuth's Ex'r v. Meuth, 157 Ky. 791, 164 S. W. 63; Holliday v. Holliday, 161 Ky. 501, 171 S. W. 156; Beard v. Beard, 173 Ky. 138, 190 S. W. 703 Ann. Cas. 1918C, 832; Sheeran v. Jarboe, 190 Ky. 843, 229 S. W. 111; McGee v. Brame, 176 Ky. 305, 195 S. W. 473; Barber's Ex'r v. Baldwin, 138 Ky. 710, 128 S. W. 1092. This court has distinctly held, however, that something more than opportunity to exercise undue influence must be shown. Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134; Seals v. Seals, supra.

In virtually every case a testator's wife has opportunity to discuss with him the matter of making a will, and it is difficult, if not impossible, to prove whether she did or did not discuss such matters. If the will takes care of those constituting the natural objects of the testator's bounty, and there is no proof of the actual exertion of undue influence, the mere opportunity afforded the wife, even when coupled with the weakened condition of the testator by reason of impaired health, does not tend to prove that the will was the product of the inhibited influence. In this case the testator, Henry Mossbarger, was married three times. His son, Griffin W. Mossbarger, is the child of the first wife, from whom Mr. Mossbarger was divorced shortly after his marriage. The son had never lived with his father, but had been reared by his mother, and his father had done but little for him during his life. In fact, with the exception of a single year, when they were together on several occasions, the father and son had not been together. Upon his return

from a long sojourn in the West, the son did not go to see his father, but wrote him a letter expressed in terms exhibiting a distant, if not indifferent, attitude. The father did not respond to the letter, and the son did not go to see him. The circumstances fully explain the reason of the testator for not giving more of his estate to the son, and rebut any inference that might arise, if there had been different conditions existing in their relationship.

It is said that Mr. Mossbarger was in a sick and weakened condition, showed devotion to the memory of his second wife, with whom he had lived many years, and who had died only a year before his third marriage, and often cried when discussing her death. She had exacted a promise of him to transfer his membership from his church to the one with which she was associated, and, after her death, he did so. We see nothing in these facts to prove that he was the victim of undue influence. The request to change his church membership was not the act of his last wife, and it was not shown that she ever influenced him to do anything. A careful study of the evidence fails to disclose any tangible ground for submitting to the jury the issue of undue influence. Stutiville's Ex'rs v. Wheeler, 187 Ky. 361, 219 S. W. 411; Stoll v. Stoll's Ex'r, 213 Ky. 789, 281 S. W. 1028.

3. It is insisted that there was misconduct on the part of two of the jurors that tried the case. The verdict sustaining the will was rendered on the 28th of June, 1928, and two days later a motion and grounds for a new trial was filed. In the motion attack was made on several members of the jury, but all but two have been eliminated from consideration. It is urged here that there was sufficient evidence affecting the two jurors to require a new trial. The circuit court heard evidence respecting the conduct of these jurors, and a supplemental transcript is filed bringing up the testimony heard on that issue. No good purpose would be served by reciting the many circumstances that were proven. The sum and substance of the whole attack is that these jurors were biased in favor of the appellee, and had so expressed themselves in advance of the trial. As to the juror Nail, one witness testified that Nail had expressed to him an opinion favorable to the appellee's case. Nail positively denied the statement. The circuit court found that Nail was telling the truth about it, and there are circumstances that tend to sustain the circuit court. As to the other juror, Good-

man, it is argued that he endeavored to get on the jury, but the facts do not warrant the argument. The juror met the deputy sheriff, who was his friend and relative, and stated that, if he had been in town earlier, he would have put him on the jury. Goodman remarked that, since it was raining, and the farmers could not work, he would be willing to serve a while. Later there was a vacancy on the venire, and the deputy sheriff summoned the juror. Most of the circumstances developed could have been shown on the voir dire. The proof regarding the other circumstances to the effect that the juror attempted to stop at Mrs. Mossbarger's house to escape from a rainstorm shows the juror in a favorable light. A storm was threatened, and the juror's wife insisted on stopping at Mrs. Mossbarger's house. Goodman refused to go in, notwithstanding which the juror's wife went to the front door, and sought admittance, or at least the privilege of remaining on the front porch during the storm. Mrs. Mossbarger expressed a wish that they should not be at her house under the circumstances. Mr. Goodman was then on the jury. Mr. and Mrs. Goodman proceeded to a garage, where they remained through the rainstorm. We are convinced that the circuit court committed no error, under the facts developed, in refusing to grant a new trial. The principles governing the matter are fully discussed in previous opinions, and need not be repeated. Mansfield v. Commonwealth, 163 Ky. 488, 174 S. W. 16; Powell v. Galloway, 229 Ky. 37, 16 S. W. (2d) 489; Allen v. Commonwealth, 175 Ky. 49, 193 S. W. 650; Clore v. Argue, 213 Ky. 664, 281 S. W. 1005.

The judgment is affirmed.