## Shelley et al. v. Chilton's Administrator et al.

(Decided November 25, 1930.)

222

MORTON K. YONTS, DAVID A. McCANDLESS, J. BALLARD CLARK and ROBERT CROWE for appellants.

R. F. PEAK, BEN F. WASHER and D. E. WOOLDRIDGE for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

In a contest of the will of J. E. Chilton, the jury returned a verdict in favor of the propounders. On this appeal by the contestants, it is insisted that the court erred in declining to submit to the jury the issue of undue influence as requested by the contestants, and that the contestants were prejudiced by an unfair argument addressed to the jury.

It was the duty of the court to submit the issue of undue influence, if there was any evidence of substance and relevant consequence tending to sustain that ground of contest. Mossbarger v. Mossbarger's Adm'x, 230 Ky. 230, 18 S. W. (2d) 997.

An understanding of the facts is essential to a consideration of the argument.

Mr. Chilton made his will on April 2, 1910, by which he devised his entire estate to his wife. Five days later he executed a codicil providing how his property should

go if his wife predeceased him. Mr. Chilton died on October 22, 1927, at the age of 88 years. His wife had died on March 25, 1925.

A month after the death of his wife, Mr. Chilton executed a second codicil to his will in which he increased some of the bequests, and made other minor changes. The immediate cause of the death of Mr. Chilton was pneumonia and he was sick but a few days. He was active in church work and business until shortly before his death. The evidence relied upon in the argument as indicating undue influence may be summarized thus:

1. Inequality in the disposition of his estate favoring his wife's relatives as against his own kindred.

2. Opportunity and disposition of the wife to exercise influence over the testator.

3. That Mr. Chilton was a mild, gentle, and genial character, of a type susceptible to the blandishments and domination of his wife.

4. The testimony of Dr. Sloan, Dr. Burnett, and Mrs. Haywood. The last-named witness quoted a statement made by Mrs. Chilton, which is especially cited as evidence of improper influence.

The will was somewhat lengthy and distributed approximately $7,000 to his wife's relatives, and less than half that amount to his own kindred. The bulk of the estate was left to Shelby Roberts, who was a nephew of Mrs. Chilton.

It is argued that the inequality in the provision made for his own and his wife's relatives was so pronounced as to call for explanation. But when the facts are considered, it cannot be said that the disposition of the estate was unreasonable or unequal.

Shelby Roberts, to whom the main estate was left, was not merely a nephew of the wife, but a foster son of Mr. and Mrs. Chilton. They had taken him in their home when he was quite young, and, with the help of his father, had reared and educated him. His mother had died when he was very young, and while yet in school his father had died. Mr. Chilton finished paying for his schooling and was greatly devoted to him. The young man had made a success in his profession and had been a source of pride and pleasure to Mr. and Mrs. Chilton. There is no evidence that Mr. Roberts had ever tried or desired to exercise any influence over Mr. Chilton. Upon one occasion he sought to have Mr. Chilton make his

home with him in Washington, but Mr. Chilton decided not to do so. This was subsequent to the death of Mrs. Chilton and when the old gentleman was past 86 years of age. He was strong enough to maintain his own wishes in the matter and reject the offer of his foster son. There was no such inequality in disposition as to manifest undue influence. Stoll v. Stoll's Ex'r, 213 Ky. 789, 281 S. W. 1028; Clark et al. v. Young's Ex'x, 146 Ky. 377, 142 S. W. 1032; Bottom v. Bottom, 106 S. W. 216, 32 Ky. Law Rep. 494.

The will manifests the thought of Mr. Chilton for his own relatives, and considerable property was given to them. Furthermore, inequality of disposition is but a circumstance to be considered on the question of testamentary capacity, or undue influence, and does not relieve contestants from the burden of proving either. Helm's Guardian v. Neathery, 226 Ky. 42, 10 S. W. (2d) 474; Mullins v. Mullins, 229 Ky. 103, 16 S. W. (2d) 788; Meuth's Ex'x v. Meuth, 157 Ky. 784, 164 S. W. 63; Mossbarger v. Mossbarger's Adm'x, 230 Ky. 230, 18 S. W. (2d) 997.

An opportunity of the wife to discuss with her husband the disposition he might make of his estate is always present, and it has been held consistently that something more than such opportunity must be shown. Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134; Seals v. Seals, 213 Ky. 779, 281 S. W. 982; Russell et al. v. Russell's Ex'r, 233 Ky. 105, 25 S. W. (2d) 54; Robinson v. Davenport, 179 Ky. 598, 201 S. W. 28.

If the will takes care of those considered the natural objects of the testator's bounty, and there is no proof of the actual presence of undue influence in procuring the will to be made, the mere opportunity which a wife has to influence her husband, although coupled with the impaired physical or mental condition of the testator, does not constitute a scintilla of evidence of undue influence. Mossbarger v. Mossbarger's Adm'x, supra.

It is true that the testator was a kind, gentle, and genial man. very considerate of his invalid wife, and ready always to please her. But these facts were manifested in acts of courtesy, consideration, and kindness, and appeared to have been the fruits of genuine affection, acquired by equal courtesy, consideration, and kindness on the part of his wife. In every instance given by the witnesses of conflicting purposes between the husband and wife respecting substantial matters the purposes

of the husband prevailed. Dr. Sloan testified, not as a physician, but as a friend, and his evidence exhibits no facts showing undue influence. Before the will was written, and fully a score of years before the testimony was given, Mr. Chilton spent about a week at the home of Dr. Sloan. At that time Mr. Chilton was engaged in settling the estate of his father. He became greatly attached to a little boy and would get down on the floor and play with him like a child. He was then showing a short memory in that he would inquire of old friends and shortly ask again about them. He would repeat apparently without knowledge that he was repeating. He further testified that Mrs. Chilton, when he would be at their home, was constantly talking about Shelby Roberts. Dr. Sloan testified that late in 1925, 15 years after the will was written, Mr. Chilton visited him again, and shortly after he arrived he received a telegram from Shelby Roberts asking him to return to Louisville on a certain day. Dr. Sloan said Mr. Chilton went to pieces, his visit was broken up, and he was constantly speculating about what Shelby could want with him. The witness thought it was childish anxiety about an uncertain and unimportant matter. Mr. Chilton returned home, and then wrote a nice letter explaining about his trip being cut short, and said that Shelby merely wanted him to sell out in Kentucky and reside with him in Washington. He further explained that he decided not to do so. Dr. Burnett testified that he saw Mr. Chilton in January, 1925; had been acquainted with him since 1906; that his talk was then incoherent; that he was childish; and would have lapses in his line of thought, showing a marked tendency to repetition. He further stated that he was showing signs of senility, but related no facts indicating that Mr. Chilton was subject to undue influence.

Mrs. Haywood testified that she heard Mrs. Chilton say that she desired that all they were worth should go to Shelby and she was going to see to it before she died that it was fixed in that manner. When asked if Mr. Chilton had any kin, she answered that he had plenty of poor kin. Mrs. Chilton made the statement 15 or more years before she died, and perhaps it was after the will was written. Mrs. Haywood further stated that Mr. Chilton had to do what Mrs. Chilton told him, but the only instance related concerned the construction of a porch on their house in which Mr. Chilton had his way.

It is impossible to spell out of such isolated incidents and fragmentary facts any evidence of undue influence sufficient to justify a submission of the question to the jury. Berry v. Moore, 220 Ky. 619, 295 S. W. 885.

Complaint is made of the argument of one of the attorneys for the propounders of the will. Much of the comment made by counsel was based upon testimony properly in the record. Some of it may have been mere deduction by way of illustration or argument, but all of it related to matters in issue and in evidence. The argument was not improper and certainly not prejudicial. Reference was made also to famous men of advanced age who were still performing important work and achieving great good for humanity. Great men of the past who reached advanced ages were mentioned.

It is conceded by counsel for appellant, as indeed it must be, that a wide latitude is allowed in argument to a jury. Fair and reasonable inferences and illustrations, and arguments based on common knowledge are allowed. Matters of current history and facts concerning public characters are considered the common property of all, and may be referred to in an argument to any tribunal. Juries are presumed to possess the common knowledge of men in general, and an argument addressed to a jury may presuppose that fact. Common knowledge includes matters of learning, experience, history, and facts of which judicial notice may be taken. An argument is not to be condemned because of its learning, or wide range of knowledge. Winstead v. Commonwealth 195 Ky. 494, 243 S. W. 40; Sturgeon v. Commonwealth, 102 S. W. 812, 31 Ky. Law Rep. 536; Jackson v. Commonwealth, 100 Ky. 239, 38 S. W. 422, 1091, 18 Ky. Law Rep. 795, 66 Am. St. Rep. 336; Housman v. Commonwealth, 128 Ky. 818, 110 S. W. 236, 33 Ky. Law Rep. 311; Tyree v. Commonwealth, 212 Ky. 596, 279 S. W. 990; Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521.

The court has considered with care the argument assailed and is unable to see that any part of it trespasses upon forbidden ground, or transcends the limits of the law. The authorities cited for appellant (Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Louisville & N. R. Co. v. Payne, 138 Ky. 274, 127 S. W. 993, Ann. Cas. 1912A, 1291; Illinois Cent. R. Co. v. Proctor, 122 Ky. 92, 89 S. W. 714, 28 Ky. Law Rep. 598; Cincinnati, N. O. & T. P. R. Co. v. Martin, 154 Ky. 348, 157 S. W. 710; Owens-

boro Shovel & Tool Co. v. Moore, 154 Ky. 431, 157 S. W. 1121) dealt with addresses which went entirely beyond the range of reasonable debate, and have no relevancy to the argument made at the trial of the present case.

The judgment is affirmed.