## Bennett et al. v. Bennett's Executor et al.

(Decided June 7, 1932.)

HENRY J. TILFORD and O'NEAL & O'NEAL for appellants.

SHACKELFORD MILLER, JR., for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Richard Bennett died on July 6, 1930, survived by nine children. Shortly thereafter an instrument executed on March 2, 1925, together with a codicil dated September 3, 1925, was admitted to probate, as his last will. By the terms of the will and codicil $1 each was bequeathed to Richard Charles Bennett, Otto Joseph Bennett, Roger Hamilton Bennett, Lillie Belle Dugan, and Raymond Gordon Bennett. The original will had given Raymond Gordon Bennett $100, but the codicil cut it down to $1. The "rest and residue" of the estate was devised to Edward Henry Bennett, Emma Ruth

Benson, Julia Lee Tipton, and Carolyn Martha Grove, in equal shares. Thus the testator actually disinherited four of his sons and one of his daughters, and left practically all of his estate to three daughters and one son. A contest was instituted by the five children who were disinherited, and they have prosecuted an appeal from a judgment sustaining the will.

The appellants assign four separate grounds for a reversal of the judgment: First, that the verdict of the jury was flagrantly against the evidence; second, the rejection of testimony as to the testator's violent temper, mistreatment of his children in early life, and the appropriation of their earnings; third, the rejection of testimony respecting alleged admissions made by some of the appellees to the effect that the testator was mentally incapable of making a will; and, fourth, the refusal to give an offered instruction upon the subject of undue influence.

1. At the time the will was executed, Richard Bennett was over 85 years of age and was living with one of his daughters, Mrs. Tipton, who was a beneficiary under the will. Previously he had been aggrieved at Mrs. Tipton and Mrs. Benson, and had executed wills disinheriting them, but those wills were destroyed, perhaps at the instance, certainly with the concurrence, of his other children.

The testator's first wife, the mother of his children, died many years ago, and he remarried in 1902. His second wife died in the autumn of 1922.

In a communnication bearing the names of all the children, except one, dated January 21, 1904, addressed to the Cave Hill Cemetery Company, it was stated that their father had remarried and disinherited all of his children, and had treated them in a manner unbecoming a parent. They besought the cemetery company not to allow the father to transfer any part of his lot in the cemetery.

Edward Henry Bennett, although one of the beneficiaries under the will testified that his father was a man of exceedingly violent temper and prejudices, and expressed the opinion that he was not competent to make a will. Like opinion was expressed by the five contestants, and there is testimony from an equal number of disinterested and unrelated acquaintances that Mr. Ben-

nett did not possess testamentary capacity. At one time several of the children conferred with Judge O'Doherty for the purpose of having their father declared incompetent to manage his estate, but no action resulted from the conference. A physician testified that Bennett's pension had been increased to the limit on the ground that he was suffering from senile dementia, and was totally disabled. On the other hand, the testimony for the propounders tended to show that the testator had a reason for discriminating among his children, possessed adequate capacity to make the will, and executed it in pursuance of his own purposes. The will was written by Judge Stites, an officer of the Louisville Trust Company. His testimony tends to show testator's capacity to make a will, and his fixed purpose to make it as he did. A number of personal friends and acquaintances of the testator expressed opinions favorable to his capacity to perform the testamentary act. The evidence respecting the mental capacity of Bennett to make a will was in direct conflict, and there was as much evidence to sustain the will as there was calling for its rejection. In such situation, we cannot say the verdict was flagrantly against the evidence. Hagedorn v. Scott, 228 Ky. 582, 15 S. W. (2d) 479.

2. The contestants offered testimony as to the conduct of Bennett towards his children more than a quarter of a century ago. It is insisted that such evidence was competent to show that the testator did not have a proper appreciation of the objects of his bounty. It is also said that his appropriation of the earnings of his children and his harshness towards them was competent evidence to show mental incapacity. It was the duty of the father to support and maintain his children, and he was entitled to their earnings. It is not contended that the testator had an insane delusion towards some of his children, but that he was a man of violent temper, abusive, and harsh towards all of them. It is at least doubtful whether any testimony concerning conduct so remote was competent. White v. Cherry, 220 Ky. 664, 2 S. W. (2d) 1060; Wigginton's Exr. v. Wigginton, 194 Ky. 385, 239 S. W. 455; Douglas' Exr. v. Douglas, 235 Ky. 121, 29 S. W. (2d) 637. But in any event it was not prejudicial in the case, because the facts were proven by other witnesses, and were not disputed or denied.

3. Mrs. Tipton and Mrs. Benson, who were beneficiaries under the will, had participated in conferences at

which it was agreed on all sides that their father was not capable of making a will. Although the numerical weight of authority is to the contrary, it is firmly settled in this state that the admissions of one legatee or devisee against his interest is admissible for whatever it may be worth against all concerned in the will. Beall v. Cunningham, 1 B. Mon, 399; Rogers v. Rogers, 2 B. Mon. 324; Milton v. Hunter, 13 Bush 163; Gibson v. Sutton, 70 S. W. 188, 24 Ky. Law Rep. 868; McConnell's Exr. v. McConnell, 138 Ky. 783, 129 S. W. 106. If the initial error of the court in rejecting the evidence was cured by the subsequent proceedings permittnig similar evidence to be heard, no prejudice resulted from the ruling. Louisville & N. R. Co. v. Howser's Admr. 201 Ky. 548, 257 S. W. 1010, 36 A. L. R. 327.

When Raymond Gordon Bennett was on the stand, he was asked regarding such a conference, and an objection was sustained. It was avowed that the witness would say that Mrs. Tipton and Mrs. Benson had stated that their father did not have capacity to make a will, and had agreed to divide the estate equally among all the children, regardless of any will he might attempt to make. Notwithstanding that ruling, the court later permitted similar evidence to be heard by the jury. Edward Henry Bennett testified that he was led to believe up until his father's death that Mrs. Tipton and Mrs. Benson had agreed that, on account of their father's condition, the estate would be divided without reference to any will. Otto Joseph Bennett testified that Mrs. Tipton had insisted at the conference that something should be done to protect the children, and admitted that the testator was old, childish, and not competent to make a will or to handle his estate. Mrs. Dugan testified that she attended a conference with her sisters, and they all decided and agreed that the estate should be divided equally among the children, in disregard of any disposition by their father. In view of these facts, no prejudicial error could be predicated on the first ruling. Potter's Admx. v. Mansard Garage & Service Station, 238 Ky. 439, 38 S. W. (2d) 233.

4. The contestants requested an instruction upon the subject of undue influence, but the request was rejected. The propriety of the ruling depends upon the fact whether there was any evidence upon which to predicate such an instruction. Mossbarger v. Mossbarger's Admx., 230 Ky. 230, 18 S. W. (2d) 997. Edward Henry

Bennett expressed the opinion that his father was very susceptible to influence. Otto Bennett testified that on three occasions when he called to visit his father at Mrs. Tipton's house he was told by Mrs. Tipton that his father was not there. On a fourth occasion he said Mrs. Tipton requested him to remain on the porch, which he thought indicated that she did not want him to see his father. He was told on that occasion that his father was not in, but a little girl who came out of the house told him that Mr. Bennett was in the bathroom shaving. The witness, however, did not believe the little girl, because Mr. Bennett did not shave himself. He made no investigation to test the truth of Mrs. Tipton's statement that her father was not present at the time. It does not appear in fact that Mrs. Tipton kept her brother from seeing his father, or that she ever exerted any effort in that direction.

Undue influence may be proven by circumstances, and slight circumstances, in some instances, are sufficient to justify an instruction upon the subject. Barber's Exr. v. Baldwin, 138 Ky. 710, 128 S. W. 1092; Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948; Livering v. Russell, 100 S. W. 840, 30 Ky. Law Rep. 1185; Lisle v. Couchman, 146 Ky. 345, 142 S. W. 1023; Bramel v. Crain, 157 Ky. 671, 163 S. W. 1125; Fry v. Jones, 95 Ky. 148, 24 S. W. 5, 15 Ky. Law Rep. 500, 44 Am. St. Rep. 206; Sheerman v. Jarboe, 190 Ky. 843, 229 S. W. 111.

On the other hand, such an instruction is not authorized on a mere presumption, and some proof must appear upon which to base it. Stutiville v. Wheeler, 187 Ky. 361, 219 S. W. 411; Stoll v. Stoll, 213 Ky. 789, 281 S. W. 1028; Cecil v. Anhier, 176 Ky. 198, 195 S. W. 837.

Mere opportunity to exercise influence is not enough, unless it is shown that advantage was taken of the opportunity. Mossbarger v. Mossbarger's Admx., 230 Ky. 230, 18 S. W. (2d) 997; Shelley v. Chilton's Admr., 236 Ky. 221, 32 S. W. (2d) 974. It is said that the unequal distribution of the estate, coupled with the circumstances, was sufficient to justify the inference of undue influence. Mere inequality or downright discrimination among relatives equally deserving is not enough to challenge the capacity or to impugn the freedom of action of the testator. Hagedorn v. Scott, 228 Ky. 582, 15 S. W. (2d) 479; Gay v. Gay, 183 Ky. 238, 209 S. W. 11. But such a fact, when not explained, and in the light of other facts, may

afford a cogent circumstance to support an inference of improper influence. Lisle v. Couchman, 146 Ky. 345, 142 S. W. 1023; Bramel v. Crain, 157 Ky. 671, 163 S. W. 1125.

The testator had manifested on frequent occasions the purpose to discriminate among his children, and he was not influenced in that respect by any of the other children. When Judge Stites explained to him that his will would invite a contest, he insisted upon it, and stated that he had reasons for disposing of his property in the manner desired.

The relationship of the children with their father was such that this act was not surprising. Mrs. Tipton was taking care of her father, but she was only one of the beneficiaries of his will, and did not know when it was executed. The testator himself sought out Judge Stites and directed him how to prepare the will. Months later he came back and added the codicil. Undue influence is an evil influence, which destroys free agency and brings about results which are not the product of the free will of the person influenced. Gay v. Gay, 183 Ky. 238, 209 S. W. 11. The evidence in this case shows that in making his will Richard Bennett acted independently of his children, and, however unreasonable or ungenerous he may have been, it was characteristic of him, and exactly what the children had expected and feared for years. A careful consideration of the evidence discloses no basis for an instruction upon the subject of undue influence.

Since no prejudicial error is apparent in the proceedings, it results that the judgment must stand.

The judgment is affirmed.