## Beall *et al.* vs Cunningham *et al.*

ERROR TO THE WASHINGTON COUNTY COURT.

*Witness.   Wills.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

WILL CASE.

*Case 111.*

1bm399
114  933,
1bm399
118  327
B Monroe
1bm399
138   78ɔ

May 21.

The decision of the County Ct.

THE County Court of *Washington* having admitted to record, as the last *will* of *Richard Beall,* deceased, a document written by himself in the year 1825, but neither subscribed by him nor attested by subscribing witnesses, the case has been brought to this Court for final hearing and decision.

The only evidence of publication is the fact that the paper is in the decedent's hand-writing, contains his name in the body of it, and is endorsed "*Richd. Beall's last*

The facts for and against the will aforesaid.

*will*," and the additional circumstance that he frequently said, not long before his death in 1838, that he had made a *will*, devising his estate substantially as prescribed in the contested document.

The opposing facts appearing on the other side are, 1st. that the instrument concludes—" *sealed and signed this       day of October*, 1825, *in presence of us*"—without any seal, subscription, or attestation: 2nd. that, since the year 1825, the decedent made a will by another docu·ment which was formally re-published in 1832, by a legally executed and attested codicil appended thereto—and which will, as thus published, contained in effect the same provisions as that of 1825, with the exception of a slight modification in the codicil; 3rd. that *Cunningham*, whose wife is one of the principal devisees in the paper of 1825, and who was nominated therein as executor, and was qualified as such in the County Court, after the probate now sought to be set aside, had said that the decedent had given him that paper as a *form* for *wills*, and told him that it was a mere form which ''he might dispose of as he pleased;'' that he had retained it in his possession until he presented it to the County Court for probate; that he was with him when he died and was directed by him to look, immediately after his dissolution, in the "till of his chest," where he would find his *will*, the fraudulent destruction of which, he seemed to apprehend—plainly alluding to the will with the codicil of 1832—and that, after the death, the examination was made as directed, but no such *will* was found.

The facts thus exhibited conduce strongly to the conclusion that the paper of 1825 was never published as a *will*.

The endorsement, as we feel authorized to presume from the manner of it, was intended, not for authenticating the paper as a consummated will, but merely for identifying it among other papers with which it was deposited for future use.   And the conclusion of the paper, the blank in the date, and the fact that the writer seemed to consider subscription and attestation, and even sealing, as necessary to publication, indicate almost conclusively that he did not intend that the instrument, thus apparent-

ly incomplete, should be his published *will* without other and more formal acts of authentication.

This deduction is fortified by the fact that he afterwards published a will in a strictly formal manner, as indicated to have been his intention by the *form* of the paper of 1825. And the will, with the codicil of 1832, was evidently the one alluded to in his subsequent conversations.

If *Cunningham's* declarations be admissible as competent evidence, no ground will 'remain for a rational doubt, as to the non-publication of the contested document.

Whether, on a trial for probate, the admissions of one of several devisees, obviously against his interest, be competent evidence, is rather a vexed question. When the devisee would gain more by the rejection than by the establishment of the *will*, his declarations would be, of course, incompetent on the ground that no person can make evidence for himself. But, suppose that $100,000 be bequeathed to A, and only $10 each to the other letters of the Alphabet, might not the admission of A, as to a fact indicating the incapacity of the testator, or as to any other fact tending to show that there was no valid will, be admissible evidence upon the issue of will or no will? It is true that, as different legatees are not, by their own voluntary contract or other act, associated in a common interest, one of the reasons why the admissions of one co-obligor or co-partner are competent as evidence against all of them, does not apply conclusively, if at all, to the case of co-legatees or devisees.

But still the admission of one legatee or devisee, obviously against his interest, should be evidence against himself, and it would seem to be unreasonable that he should escape the effect of them altogether, merely because they might not be equally conclusive as to the interest of his co-legatees or devisees. Any rule of evidence that would entitle him to such an escape would equally apply to the admissions of nineteen out of twenty co-legatees, and even when the interest of the twentieth legatee, who had made no admission, may not be equal to one thousandth part of the aggregate interests of the nineteen who had made admissions against the validity of the common

*Qu.*—Can the admission of one of several devisees, (obviously against his interest,) be legally admitted on a trial for probate of the will? They are legally admissible as presumptive evidence, not as an admission by all concerned, but by one concerned, against his interest, which would not have been made unless he believed it true.

document. This would, in our judgment, be unreasonable and unjust.

It would, in our opinion, be more consistent with principle and analogy, to allow the admission of a fact by one of several legatees or devisees, evidently against his own interest, to be evidence, entitled to the effect, not of an *admission* by all his associates in interest, but of the simple circumstance that a party interested, admitted what he probably would not have done had he not believed it to be true. And this fact, though not entitled to the effect of an *admission* by all concerned in a common interest under the will, may nevertheless tend, legitimately, to a presumption against all of them, (in *a degree corresponding with all the circumstances*,) that the thing admitted may be true.

Such parties, like co-obligors, have a common interest in the same question and must stand or fall together. They are thus consolidated by their testator, and by their own act, in claiming under his will. And each of them can, *therefore, refuse to testify against the will.* Would it not then be unreasonable to conclude that, what one of them knows and admits against the will should not be admissible as a fact tending in some degree as a presumption against its validity?

Therefore *Cunningham's* declarations, being apparently against his interest, were admissible as presumptive evidence in this case. And this deduction is strengthened, as to what he said concerning the document of 1825, by the fact that he was the depository thereof, and produced it for probate.

We feel, therefore, constrained to decide that the paper admitted to record by the Probate Court of Washington, does not appear to have been published as the last will of *Richard Beall*, deceased.

*A paper, dated in 1825, is offered for probate & recorded by the County Ct.—on error brought, tho proof shows a subsequent will of 1832, made & duly published— this Court will.* But we have hesitated on another question incidentally involved, and that is, whether we should now, as a Court of original jurisdiction in this case, establish and record a substantial copy of the will re-published in 1832, the contents of that will being substantially now proved.

Not only *Cunningham's* statements but other facts conduce to the presumption that the the last will, with the

codicil of 1832, was never revoked, but has been either lost or fraudulently purloined. And *Cunningham* being a nominated executor in that will and charged by the testator's dying injunction with the immediate curation of it, his testimony might be sufficient in the absence of any countervailing fact, to authorize extraneous proof as to its contents.

not order a copy of such last will so proved here to be *here* recorded, as it was not offered for record here or in the Ct. below, but leave the parties to litigate that matter as they may hereafter elect.

But, upon full consideration, we feel impelled to the conclusion that, there having been no offer, either in the County Court or in this Court, to establish the will of 1832, and record a substantial copy of the contents of it as a lost document, and as, therefore, its validity and contents have not been primarily or directly litigated or presented for litigation, we should not now decide as to its presumptive non-revocation by the testator or as to its contents, but should leave those matters for future litigation, if any of the parties shall ever attempt to procure probate of its contents as of a valid last will either lost or fraudulently destroyed.

It is therefore considered that the order, admitting the paper of 1825 to record, as the original last will of *Richard Beall*, deceased, be set aside and annulled.

*McHenry and Harlan* for plaintiffs: *Owsley and Booker* for defendants.