CASE 104—PROCEEDINGS BY A. W. WALL AND OTHERS TO PROBATE THE WILL OF ELIZABETH A. WALL, DECEASED, IN WHICH LYDIA E. DIMMITT AND OTHERS CONTEST THE VALIDITY OF THE WILL.— FEB. 24.

## Wall and Others v. Dimmitt and Others.

| 114 | 923 |
| 138 | 786 |

APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT FOR CONTESTANTS AND PROPOUNDERS APPEAL. REVERSED.

WILLS—UNDUE INFLUENCE—EVIDENCE—DECLARATIONS OF DEVISEE— PRACTICE.

Held:  1. Statements or declarations of a testator, whether made before or after the execution of the will, are not competent as direct evidence of undue influence, but are only admissible to show the mental condition of the testator at the time of making the will, and his susceptibility to the influences by which he was surrounded at the time.

2. In a will contest by heirs who alleged that the will was procured by the undue influence of testatrix's husband, evidence that the husband had stated that he would see that contestants received no part of the wife's estate was admissible.

3. Where a finding that a will was procured by undue influence was found on appeal to be unsupported by the evidence, but it was also decided that certain evidence, which might have formed a basis for the finding was erroneously excluded, the case can not be remanded with an order to probate the will, but must be remanded for a new trial.

4. Where a husband was a beneficiary under his wife's will, the fact that, as tenant by curtesy, he would have taken the same interest he took as devisee, did not render his declarations bearing on the question of undue influence inadmissible as against his co-devisees.

5. In a will contest by a disinherited heir of testatrix, in which it was alleged that testatrix's husband exercised undue influence to procure the will, questions to the husband as to whether he had ever said to his wife that one of the contesting heirs was a spendthrift, who would dissipate the property, and for her to see that the matter was fixed in such a way that he could not get any part of it, were improperly excluded.

E. L. WORTHINGTON, FOR APPELLANT.

GARRETT S. WALL AND LEWIS APPERSON, OF COUNSEL.

## POINTS AND AUTHORITIES.

1. No presumption of undue influence arises from the fact that the draftsmen of a will or his family, is a beneficiary under the will.   Notes to *In re* Hess's Will, 31 Am. St. Rep., 683; 1 Underhill on Wills, sec. 137; 1 Jarman on Wills, Bigelow's note, 66.

2. The fact that a testator by his will gives more to some of his children than to others is no evidence that it was procured by undue influence.   Zimlich v. Zimlich, 90 Ky., 657; Hoerth v. Zable, 92 Ky., 202.

3. Declarations of testator whether made before or after the making of a will, are not competent to show undue influence. 1 Jones on Evidence, secs. 492-493; 2 Wharton on Evidence, sec. 1010; Notes to *in re* Hess's Will, 31 Am. St. Rep., 690; 1 Jarman on Wills, Bigelow's note, 71; 1 Underhill on Wills, sec. 161; 1 Williams on Executor, 64 note; Goodbar v. Lidikey, 43 Am. St. Rep., 301; Milton v. Hunter, 13 Bush, 168; Lucas v. Cannon, 13 Bush, 650.

4. Husband and wife have a right to influence each other in the making of their wills.   Schouler on Wills, sec. 236; Page on Wills, sec. 410; Secrest v. Edward, 4 Met., 174; Broaddus v. Broaddus, 10 Bush., 303; Turley v. Johnson, 1 Bush, 116.

5. When influence is exerted from  disinterested  motives  no inference can arise that it was an improper influence.   Harrison's Will, 1 B. Mon., 351.

6. The declarations of a devisee are admissible to prove undue influence only when they amount to an admission against his interest.   1 Underhill on Wills, sec. 163; 1 Jarman on Wills, Bigelow's note, 71; Beall v. Cunningham, 1 B. Mon., 399; Rogers v. Rogers, 2 B. Mon., 324; Milton v. Hunter, 13 Bush, 167.

7. The fact that a testator keeps secret the contents of his will is no evidence that it was procured by undue influence.   1 Underhill on Wills, sec. 131.

8. Opportunity to exert undue influence is no proof that it was actually exerted.   1 Underhill on Wills, sec., 130.

Wall and Others v. Dimmitt and Others.

9. To sustain a charge of undue influence two things must be proved, that the influence was exerted and that it was effectual. Schouler on Wills, sec. 242; 1 Underhill on Wills, sec. 126

10. Where there is no evidence of undue influence or want of testamentary capacity, this court will reverse the case with direction to order the will probated. Bush v. Lisle, 89 Ky., 393. Broaddus v. Broaddus, 10 Bush, 299; Sanders v. Blakeley, 21 Ky. Law Rep., 1321.

ADDITIONAL AUTHORITIES CITED BY GARRETT S. WALL AND LEWIS APPERSON.

16 Am. Dec., 253 and Note, 1 B. Mon., 351; 3 Wharton, 129; 70 New York, 387; 1 Redfield on Wills, 522 and Note 32; 2 Mar., 225, 4 Mon., 239, 1 Bibb, 611, 2 Bibb, 311; 6 Mon., 136, 6 B. Mon., 341; Hardin, 549; 5 Dana, 8, 7 Bush, 203; Trost v. Dingler; 10 Central Law Reports, 118 Pa., 259; 116 Pa., 612; 4 L. R. A., 738, 1 L. R. A., 161, Elkinton v. Brick; 13 Central Rep., 383, L. R. A., vol. 8, p. 261 and notes; 3 Am. Dec., 390, 25 Am. Dec., 167, 20 Am. Dec., 100; 62 Am. Dec., 71 and notes, 93 Am. Dec., 624 and 691; 13 Bush, 163, 10 Bush, 299; Bush v. Lisle, 89 Ky.; 393, 90 Ky., 28; 82 Ky., 92; 81 Ky., 15; 10 Bush, 304 and 652; 4 Met., 174; 13 Bush, 163; 1 Bush, 116, 2 J. J. Mar., 64, 4 B. Mon., 12; Sec. 606, Civil Code, Alexander's Exrs. v. Alford, &c., 89 Ky., 105; Commonwealth v. Sapp, 90 Ky., 580.

SALLEE & SALLEE, FOR APPELLEES.

POINTS AND AUTHORITIES.

1. The same effect shall be given the verdict in a will case as is given in other civil cases. Kentucky Statutes, sec. 4850.

2. The verdict must be tested by the instructions. It is not contrary to law if justified by the instructions. Kelly v. Davis, 9 Ky. Law Rep., 647.

3. The assignment of error that the verdict is not sustained by the evidence presents the single question whether there is any evidence to support it. Jones v. Wocher, Richie and Hanford, 90 Ky., 232; Chism v. Barnes, 20 Ky. Law Rep., 569.

4. A new trial ought not to be granted merely because a higher court would have decided otherwise on the facts. L. & N. R. R. Co. v. Connelly, 9 Ky. Law Rep., 993; Smith v. Crow, 21 Ky. Law Rep., 222.

5. Where the evidence is in conflict this court will not set the verdict aside on the ground that it is against the weight of the evidence. Stroud v. Simpson & Co., 16 Ky. Law Rep., 318; Ohio

Ry. Co. v. Alves, 11 Ky. Law Rep., 811; Carlin v. Baird, 11 Ky. Law Rep., 934.

6. The verdict may seem to be against the weight of the evidence. The proof may preponderate in favor of the will. Yet unless the verdict is so palpably against the weight of the evidence as to indicate passion or prejudice, this court will not set it aside on that ground. Newcomb v. Newcomb, 96 Ky., 120; Lischy v. Schrader, 20 Ky. Law Rep., 846.

7. Declarations of one devisee to another devisee concerning the execution of the will in contest are relevant and competent when tending to show undue influence. 1 Jones on Evidence, sec. 237; 1 Greenleaf on Evidence, sec. 169; Beall v. Cunningham, 1 B. Mon., 399; Milton v. Hunter, 166; Cave v. Cave, 13 Bush, 452; Wilson v. Hays, 22 Ky. Law Rep., 897; Grove v. Grove, 13 Ky. Law Rep., 807; Porschet v. Porschet, 82 Ky., 102; Wharton on Evidence, vol. 1, sec. 21; Fee v. Taylor, 83 Ky., 264; Mason v. Bruner, 10 Ky. Law Rep., 155; Mercer v. King, 13 Ky. Law Rep., 429.

8. Kentucky courts have held steadfastly to the rule that heirs, devisees and all parties interested in sustaining or rejecting a will are in a contest over its probate competent to testify the same as other witnesses in other civil cases. Williams v. Williams, 90 Ky., 35; Phillips v. Phillips, 81 Ky., 328; Flood v. Pragoff, 79 Ky., 614; Cave v. Cave, 13 Bush, 452; Milton v. Hunter, 13 Bush, 163; King v. King, 19 Ky. Law Rep., 869.

9. Proof of execution and contents of a former will and conversations with testatrix, afford evidence of her fixed purposes and illustrate her cherished intentions with respect to her property. Barlow v. Waters, 16 Ky. Law Rep., 426; Powers v. Powers, 21 Ky. Law Rep., 597; Muller v. Muller, 22 Ky. Law Rep., 207; Carlin v. Baird, 934.

10. Declarations of the testatrix are relevant and competent to show her susceptibility to surrounding influences. Lucas v. Cannon, 13 Bush, 563; Shropshire v. Reno, 5 J. J. Mar., 91; Harrell v. Harrell, 1 Duvall, 205.

11. Any evidence of testatrix's conduct or conversation tending to show her feelings towards her daughter or previous intentions in respect to the disposition of her estate are relevant and competent. Randolph v. Lampkin, 90 Ky., 556; Williams v. Williams, 90 Ky., 35; Fry v. Jones, 95 Ky., 151; Turner v. King, 98 Ky., 253; Johnson v. Stivers, 95 Ky., 128; Fuller v. Fuller, 83 Ky., 351.

12. A peremptory instruction is never proper when there is any evidence conducing to establish the truth of plaintiff's contention. 23 Ky. Law Rep., 121; 97 Ky., 53; 93 Ky., 343; Hud-

Wall and Others v. Dimmitt and Others.

son v. Adams, 20 Ky. Law Rep., 1267; Thompson v. Thompson, 17 B. Mon., 22.

13. There was no error in the court refusing to modify instruction No. 2. It would have been error to modify same as requested which would have confined the jury to believe testatrix was acting under the undue influence of one or two of the propounders and no other person or persons. Dean v. Phillips, 22 Ky. Law Rep., 1622; Wise v. Foote, 81 Ky., 15; Morris v. Morton, 14 Ky. Law Rep., 363.

14. The court is not bound upon its own motion to instruct on the entire law of the case. Propounders must ask for instructions before they can complain that certain instructions were not given. Turner v. King, 98 Ky., 253; Underhill v. Underhill, 16 Ky. Law Rep., 718; Adams Express Co. v. Singleton, 7 Ky. Law Rep., 296.

15. To invalidate a will it is not necessary for the undue influence to be exerted at very time of execution. It is sufficient that a controlling influence previously put in motion is still controlling to the extent of destroying free agency. Overall v. Bland, 11 Ky. Law Rep., 371.

16. Undue influence is nearly always difficult of proof but the jury may infer its existence from circumstantial evidence. Lischy v. Schrader, 20 Ky. Law Rep., 846; Randolph v. Lampkin, 90 Ky., 557.

17. Gross inequality of distribution between children, in connection with other evidence of undue influence, is a proper matter of consideration for the jury, in a question of undue influence. Zimlich v. Zimlich, 90 Ky., 661; Sherley v. Sherley, 81 Ky., 247; Bledsoe v. Bledsoe, 8 Ky. Law Rep., 55.

18. The secrecy enveloping this will; the draftsman and testatrix residing in the same house and the excessive advantages gotten by him and children under the will; strike the mind as being wrong and require the propounders to show that the testatrix had volition and capacity. Flood v. Pragoff, 79 Ky., 612.

19. The detection of undue influence is a question peculiarly for the jury, and this court should not disturb their finding upon any mere semblance of error occurring during the trial. Smith v. Crow, 21 Ky. Law Rep., 222; Fry v. Jones, 95 Ky., 148.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

This is an appeal from a judgment of the Mason circuit court, rendered pursuant to a verdict of a jury, refusing to probate as the last will of Elizabeth A. Wall a testamentary paper duly executed by her on October 31, 1896.

The will was assailed in the court below on the ground that it was procured by the undue influence of the husband and son of testatrix. Mrs. Wall was at the date of its execution 80 years of age, and her husband was then 88 years old. She died about 18 months later, leaving surviving her, as her heirs at law, her husband, Dr. A. H. Wall; her daughters, Mrs. Lydia E. Dimmitt, who had one child, and Mrs. Mary W. Apperson, who had two children; and a son, Garrett S. Wall, who had three children. Her entire estate consisted of a tract of about 450 acres of very valuable land, conceded to be worth in the neighborhood of about $100 an acre. Prior to the making of the will, testatrix and her husband had advanced to each of their children about $18,000. For many years prior to her death her son, G. S. Wall, and his family, had lived with testatrix in her residence in Maysville, Ky. Her relations with each of her children were most cordial, frank and affectionate. In the latter part of the year 1891, Mrs. Wall made a will by which she gave one-third of her 450 acres of land to her son in fee, one-third to Mrs. Apperson in fee, and the remaining third to Mrs. Dimmitt for life, with remainder to her son Hal Dimmitt, and, in case he died without children, then to revert to Garrett Wall and Mary W. Apperson and their children. Hal Dimmitt was at that time, and so continued, a married man, with one child. The will of 1891 was retained by Garrett S. Wall, and was in his custody until two days before the making of the will of October 31, 1896. In the will of 1896, testatrix changed the devise to her daughter, Mrs. Lydia E. Dimmitt, so as to give to Mrs. Dimmitt one-third of the 450 acres for life, and then provided that at her death her executor, named in the will, should sell and convey this tract of land to the highest bidder, and divide the proceeds equally between

her six grandchildren, share and share alike.  It appears
from the testimony that the provisions of the first will
were well known by all the family of the deceased, but
that the existence of the second will was not known to
Mrs. Dimmitt until after the death of her mother, al-
though she testifies that their relations continued to be
of the most affectionate character, and that she assisted
in nursing her for several weeks immediately preceding
her death.   Mrs. Dimmitt testified upon the trial before
the jury: That, a short time before the execution of the
will of 1891, her mother said to her that her father de-
sired her to make a will, and to leave to her only a life
estate in one-third of the land, and that at her death it
should go to her brother and sister, to which she objected,
and that her mother replied that it would be unjust, and
she would not make such a will, but would make a will
giving the land to witness and her son Hal Dimmitt dur-
ing their lives, and at the death of both to her grandson,
son of Hal Dimmitt.   That subsequently she frequently
talked with her mother about this will, and was assured
by her that the will had been written as she promised.
That she never heard of the execution of the last will until
some time after the death of her mother, when she wrote
to her brother concerning the probation of the first will.
That, in response to this letter, Garrett Wall, for the first
time, informed her by letter of the will of 1896, in which
he assured her that he had nothing to do with it, except to
write it.   By the same mail, Mrs. Dimmitt received the fol-
lowing letter from her father: "Maysville, Ky., May 7, 1898.
My dear daughter:  I have read the letter to your brother.
I will now answer it.  I do know what she did in the provi-
sion of the land was after many weeks' reflection, all
caused by your prodigal son, who you can not trust with

money or anything he can sell to bring money. You have one-third interest during life or its income. As to the Dr.'s thinking it a reflection on him, I have no idea it ever entered her mind. As she certainly had the highest regard and love for him. I am interested in her will and will certainly have it probated. We each had a will, and had I died first every thing was left to her and vice versa. I will be disappointed if she hasn't left everything to me. I have done through life what I thought due to my children and shall die so. I am going to do the best I can for you all whilst I live and try to part in peace. Much Love affectionately your father Alex H. Wall." That after the reception of this letter she went to see her father, and he began the conversation by saying: "Daughter, you can not break your mother's will; it is no use trying; and don't reproach your brother. I am the one to blame. Blame me with the whole thing." She also testified that her father had a very strong will, and that her mother was gentle and yielding, and had always been delicate, and during the last two or three years of her life had failed perceptibly. G. S. Wall testified that he had written both wills at the instance of his mother, and had always retained them in his possession; that, when he prepared the last will, his mother, after giving Mrs. Dimmitt a life estate in one-third the land, directed that at her death it should be sold, and one-half the proceeds should go to Mrs. Apperson's children, and one-half to his children, but that at his suggestion his mother changed and directed that the land should be sold, and the proceeds divided equally among her six grandchildren, so that his children would get three-sixths, Mrs. Apperson's two-sixths and Hal Dimmitt one-sixth. This was substantially the only testimony which was admitted upon the trial which

tends, even under the contention of appellee, to establish undue influence in the procurement of the will.

The law is well settled in this State, and is abundantly supported by the text-writers and decisions of other States, that the statements or declarations of a testator, whether made before or after the execution of the will, are not competent as direct and substantive evidence of undue influence, or to show that the will was procured thereby, but are admissible to show the mental condition of testator at the time of the making of the will, and her susceptibility to influences by which she was surrounded at the time.    See Jones on Evidence, secs. 492-493; Wharton on Evidence, sec. 1010; notes to *in re* Hess' Will (Minn.), 51 N. W., 614, 31 Am. St. Rep., 690; Bigelow's notes to Jarman on Wills, 71; Underhill on Wills, sec. 161; Williams on Executors (1st Ed.), 64; Goodbar v. Lidikey (Ind. Sup.), 35 N. E., 691, 43 Am. St. Rep., 301; Milton v. Hunter, 76 Ky., 163.    And when we eliminate the declarations of testatrix, testified to by Mrs. Dimmitt, there is very little evidence left in the record bearing upon the question of undue influence—certainly not sufficient to authorize the conclusion that the will was the result thereof.    We are therefore of the opinion that the verdict, upon the case as presented in the record, is palpably against the weight of evidence, and for this reason the judgment must be reversed.    But in view of the fact that the trial court excluded from the consideration of the jury the testimony of Dr. Alex Hunter, Con Guilfoile and William C. Johnson as to the declarations made to them by Dr. A. H. Wall, to the effect that he would see that his grandson Hal Dimmitt received no part of the Wall estate, and which, in our opinion, was entirely competent, and would have fur-

nished some basis for the verdict of the jury, if it had been admitted, we would not be justified, therefore, in remanding the case with an order to probate the will. In Broaddus' Devisees v. Broaddus' Heirs, 73 Ky., 299, it was held that the General Statutes required that this court should, on appeal, give the same effect to the verdict of the jury in a will case as is given in other civil cases, and repealed that part of section 519 of the Civil Code of Practice which provides that the court of appeals should in such cases try both the law and facts, and that a new trial would be awarded on the reversal of a will case, except in those cases where there was no evidence to sustain the verdict. In that case it was held that there was no evidence, and the will was ordered to probate. And it has been followed in two or three instances where the court found that there was no evidence to sustain the verdict. But ordinarily the same rule of practice obtains in will cases as in other jury trials. And this case will have to go back for a new trial before a jury. and we are of the opinion that it was competent for contestants to prove acts and declarations of Dr. Wall which tended to support their contention that he had unduly influenced his wife in the execution of the will. He is a beneficiary under the will, and was active in its probation, and the appeals from the judgment of the trial court is prosecuted in his name. The fact that, as a tenant by curtesy, he would have taken substantially the same interest in the estate of his wife as came to him as devisee under the will, can not change the well-established rule in this State that admissions and declarations of a legatee or devisee under a will are competent not only against himself, but also as to the interest of his co-legatees or devisees thereunder. This question was fully considered

by this court in Beall v. Cunningham, 40 Ky., 399, Rogers v. Rogers, 41 Ky., 324, and in Milton v. Hunter, etc., 76 Ky., 163; and in the very recent case of Gibson, etc., v. Sutton, etc., 24 R., 868, 70 S. W., 188, this court said: "We do not feel at liberty at this late day to disregard decisions which have been generally acquiesced in by the profession as sound, because not in accord with the rule of other States."

The trial court also erred in sustaining an objection to the following questions which were propounded to the appellant Dr. A. H. Wall by contestants: "Q. Did you ever say to your wife that Hal was misbehaving in such a way?" "Q. Did you ever say anything to your wife about his being a spendthrift, and that he would spend the property or dissipate it, and for her to see the matter was fixed in such a way that he would not in any contingency get any part of her property?"

For reasons indicated, the judgment is reversed, and cause remanded for a new trial not inconsistent with this opinion.