## Welch's Adm'r et al. v. Clifton et al.

June 1, 1943.

515

Boyd & Boyd for appellants.

Terrell & Schultzman for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Mrs. Louisa Welch died testate in January, 1942. There survived her four daughters and two sons. Three of the married daughters, including the appellant, Mrs. Agnes E. Watson, live in Texas. The appellee, Mrs. Mary R. Clifton, who also lives in Texas, instituted this proceeding to set aside her mother's will on the grounds of mental incapacity and undue influence on the part of Mrs. Watson. The trial resulted in a verdict finding the will under which Mrs. Watson had been favored over the

other children was not the will of Mrs. Welch. Reversal is urged upon the grounds that (1) a verdict should have been directed in favor of the appellants; and (2) the court permitted incompetent evidence to be introduced.

Mrs. Welch was 82 years of age at the time of her death. For many years she had operated a poultry booth in the city market in Paducah. She left $2,300 in bonds in the Home Owners' Loan Corporation which were given to Mrs. Watson, and real estate valued at $6,700, which she directed should be divided among the other children. Mrs. Welch had been in poor heatlh for several years prior to her death. She became critically ill in March, 1941, and all of her children were called to her home in Paducah at that time. She recovered from that illness and the children returned home, with the exception of Mrs. Watson, who stayed with her mother until sometime in June or July. In April Mrs. Welch went to the office of an attorney, accompanied by Mrs. Watson, and there directed the manner in which she wanted the will prepared. In September of 1941, Mrs. Clifton came to Paducah and took her mother back to Texas with her, where she visited her daughters until the time of her death.

The question of mental incapacity can be disposed of simply, since there was an utter failure on the part of the appellees to show that Mrs. Welch lacked mental capacity to dispose of her property at the time of the execution of the will in April, 1941. In fact, counsel for the appellee state in their brief they do not take the position that on the occasion of the writing of the will Mrs. Welch was so mentally incapacitated as not to know what she was doing.

The evidence advanced by the appellees on the question of undue influence was directed toward facts and circumstances leading up to and attendant upon the execution of the will. Briefly stated, this evidence related to the age and physical condition of Mrs. Welch; that she was under the care of a doctor and taking medicine; the confidential relations between her and Mrs. Watson; that Mrs. Watson was with her mother at the time the will was executed; the execution of a prior will; the statements made by Mrs. Welch before the execution of the will under attack to the effect that she planned to divide her property equally among her children; and statements made by her while in Texas showing she was

dissatisfied with her business affairs and that she wanted to return to Paducah and straighten them out. Evidence was introduced also relating to certain statements made by Mrs. Watson. One statement was that she said she would be paid and paid well for staying with her mother in Paducah after her illness in March, 1941. All of the children were present when the will was opened, except Mrs. Watson, who had gone to a beauty parlor instead of attending the reading of the will. There is testimony showing that on the night after the will had been opened a discussion arose among the children as to its provisions. The testimony for the appellees shows an argument developed between Mrs. Watson and one of her brothers during which she said:

"You folks have no business censuring me; it is through my kindness that you got anything. I could have had the whole thing, if I wanted it."

Another statement attributed to Mrs. Watson on the same occasion, in answer to a statement made by Mrs. Clifton that her mother had not dictated or written the will, was:

"She did, you ought to keep your mouth shut and ought to be satisfied you got a thing because mother would have given it all to me."

There is proof for the appellants to the effect that Mrs. Welch was perfectly able to take care of her business; knew what she was doing; disposed of her property as she desired; favored Mrs. Watson because she had been with her so much and had done so much for her; her only reason for wanting to return to Paducah was to straighten up some of her business affairs; and Mrs. Watson did not make the statements attributed to her.

The appellants insist most of the evidence relating to the question of undue influence was incompetent, because there was no direct proof on the issue and there had been a failure to show a lack of mental capacity. Raison v. Raison, 148 Ky. 116, 146 S. W. 400. As pointed out in Smith v. Ridner, 293 Ky. 66, 168 S. W. (2d) 559, a wide range of proof is allowed when a will is being contested on the grounds of mental incapacity and undue influence; and also when mental incapacity is shown only slight evidence as to the undue influence will warrant the submission of the case to the jury on that issue. It is our rule also that undue influence may be proved by cir-

cumstances leading up to and attendant upon the execution of a will, which, when taken together, are convincing, notwithstanding the fact that each circumstance standing alone might be inconclusive. Hanna v. Eiche, 258 Ky. 282, 79 S. W. (2d) 950.

Both parties moved for a peremptory instruction. These motions were overruled, and over the objections of the parties the court submitted the case to the jury on both questions, namely, mental incapacity and undue influence. The verdict does not show upon which ground it was based. It is obvious from what has been said heretofore on the question of mental incapacity that it was error to submit the question to the jury.

The question of undue influence is a close one. Obviously, the trial court felt there was more than a scintilla of evidence on the question of mental incapacity, as well as that of undue influence. That accounts for the wide range of proof he allowed during the trial; but, since the question of mental incapacity is eliminated, we must test the admissibility of the proof as to undue influence in the light of our rulings on the question. Generally speaking, statements of the testator made before or after the execution of a will are not admissible as substantive evidence on the sole question of undue influence. They are admissible, however, after a foundation has been first laid by substantive proof on the issue; but substantive proof of probative value is necessary to warrant the submission of the case to the jury. Our most recent case on the subject is McComas v. Hull, 284 Ky. 654, 145 S. W. (2d) 841, 842. In that case it is said:

"We must disagree with appellants that the court permitted incompetent evidence to be introduced upon behalf of appellees. Cleveland Hensley and Tilden Hensley, half brothers of testator's wife, testified as to certain statements made to them by testator several years after he executed his will to the effect that his wife would not allow him to give any part of his property to the children of his deceased daughter, Mrs. Hull. Such declarations by the testator were not competent whether made before or after the execution of the will as direct and substantive evidence of undue influence or to show that the will was procured thereby, but are only admissible to show testator's mental condition at the time of making the will and his susceptibility to

the influence of his wife.' Wall v. Dimmitt, 114 Ky. 923, 72 S. W. 300, 24 Ky. Law Rep. 1749; Wilson v. Taylor, 167 Ky. 162, 180 S. W. 45; Mullins v. Mullins, 229 Ky. 103, 16 S. W. (2d) 788. That this rule is in harmony with text writers and with decisions of other courts may be seen from an examination of 6 Wigmore on Evidence (3d Ed.) pages 119, 121, 123, sec. 1738, and annotation in 79 A. L. R. 1447. Therefore, this evidence was not incompetent and the record does not show appellants asked the court to admonish the jury that they should not consider it as substantive evidence on the question of undue influence but only as to testator's susceptibility to such influence.''

It can be seen from the foregoing quotation that it was not error for the court to admit the evidence under attack, assuming its admissibility on other grounds, since it was admissible to show Mrs. Welch's mental condition at the time of the making of the will and her susceptibility to the influence of Mrs. Watson; but such evidence, of itself, would not warrant the submission of the case to the jury, in the absence of substantive evidence on the issue. We believe the evidence as to the aforementioned statements attributed to Mrs. Watson, and the inferences to be drawn from the circumstances surrounding the execution of the will, constitute sufficient substantive evidence to warrant the submission of the case to the jury on the question of undue influence. The opportunity for undue influence was shown conclusively, but, as we have frequently held, this of itself is not sufficient to warrant the submission of the case to the jury. Raison v. Raison, supra. A reasonable inference to be drawn from the statements attributed to Mrs. Watson is that she had her mother under her influence to the extent that she dictated the terms of the will. There is also the fact that Mrs. Watson got all of the liquid assets of the estate which comprised a much larger share than that going to the other children. The foregoing quotation from the McComas case indicates the propounders of the will should have asked the court to admonish the jury to the effect the evidence as to statements made by the testatrix should not be considered as substantive evidence on the question of undue influence, but only as to the testatrix's susceptibility to such influence. No such motion was made in the case at bar. If there be another trial of this cause and the evidence thereon be the same, it would be

proper for the trial court to admonish the jury as indicated in the McComas case upon the request of the propounders.

Judgment reversed with directions to set it aside and for proceedings consistent with this opinion.