Nellie Sue Adams **GOLLADAY** et al.,
Appellants,

v.

William C. **GOLLADAY** et al., Appellees.

Court of Appeals of Kentucky.

Dec. 9, 1955.

Trimble, Soyars, Keith & Breathitt, Edward T. Breathitt, Jr., John O. Hardin, Hopkinsville, for appellants.

Chas. J. White, Cadiz, James P. Hanratty, Hopkinsville, for appellees.

CULLEN, Commissioner.

Upon a jury verdict, judgment was entered setting aside the will of William L. Golladay, on the ground of undue influence exercised by his wife, the chief beneficiary. The contestants were two sons by a former marriage. The wife has appealed, asserting only one ground of error, which is that the court should have directed a verdict in favor of the will.

Mr. Golladay executed his will on June 10, 1953, at the age of 83. He died on July 2, 1953. At the time he executed the will his wife was 72 years of age, and

his twin sons, by his first wife, were 46 years old. He owned real estate (a farm) valued at $25,000 and personal property valued at around $8,000. It is computed that his net estate will be around $28,000. The will left the entire estate to the wife, except for a bequest of $100 to one of the sons and a small bequest to the other son in the form of cancellation of part of the interest due on some notes he owed the testator.

Mr. Golladay's first wife died in 1908, shortly after the birth of the two sons. Eight years later, in 1916, he married the present Mrs. Golladay, and they lived together on his farm for 37 years until his death in 1953. During the first 30 years they were in debt, and they managed to achieve a moderate financial success only during the last seven years. The two sons were raised by relatives, and did not live on the farm during their boyhood. After one of the sons, William, was married, he spent ten years on the farm, operating it with his father, but then left. Later, one of William's sons worked on the farm with his grandfather.

It appears that the relations between Mrs. Golladay and the two sons never were friendly, and at times approached open hostility. However, the sons seem to have remained on reasonably friendly terms with their father, and from time to time engaged in business transactions with him.

■ With the background thus sketched in, we approach the question of the sufficiency of the evidence of undue influence. At the outset, it is our opinion that the disposition made by this will cannot be considered so unnatural or grossly unequal as to place the burden upon the propounder of giving some reasonable explanation of its unnatural character. See Franks' Ex'r v. Bates, 278 Ky. 337, 128 S.W.2d 739. Mrs. Golladay had lived and worked with her husband for 37 years, helping him to accumulate his modest estate. She had a life expectancy of around nine years at the time the will was made, and the testator might well have anticipated that her needs for the balance of her life would consume the entire estate. The two sons were middle-aged adults and had made their own way for most of their lives. They had not made substantial contributions towards the well-being of their father. So the unqualified burden rested upon the sons to establish undue influence.

The evidence for the contestants was designed to show (1) susceptibility of Mr. Golladay to influence; (2) opportunity of Mrs. Golladay to exercise influence; and (3) a purpose or intent of Mrs. Golladay to exercise *some* influence.

The evidence as to susceptibility consisted of statements alleged to have been made by Mr. Golladay to the effect that his wife was "worrying him to death to make a will;" that he was going to make a will leaving his property to her "and maybe she would leave him alone and he would see some peace," and that he had made the will "to see if I can have some peace." There also was evidence as to statements, a year or two previous to the making of the will, that he then intended to "let the law make a will for me," and that he wanted his sons to have the farm but also wanted Mrs. Golladay to be taken care of.

■ It is firmly established that statements by a testator, of the character above described, are not competent as substantive proof of undue influence, but are admissible merely to show the testator's mental condition at the time he made the will and his susceptibility to influence. McComas v. Hull, 284 Ky. 654, 145 S.W. 2d 841; Wilson v. Taylor, 167 Ky. 162, 180 S.W. 45; Wall v. Dimmitt, 114 Ky. 923, 72 S.W. 300. Evidence of susceptibility is not, of itself, sufficient to warrant submission of the case to the jury on the question of undue influence. Welch's Adm'r v. Clifton, 294 Ky. 514, 172 S.W.2d 221, 148 A.L.R. 1220.

Some further evidence that might be classed as dealing with the question of susceptibility was that Mr. Golladay some-

times deferred to his wife's wishes in matters affecting the operation of the farm; particularly where some transaction with the sons was involved. Also, there was evidence that on the day Mr. Golladay went to town to execute the will, his wife made the arrangements for his transportation, and he at first expressed an unwillingness to go. However, it appears that the primary purpose of the trip was for him to visit his doctor.

■ As concerns opportunity to exercise influence, the evidence showed no opportunity greater than that available to any wife in a normal marital situation. Mere opportunity of the wife, even though coupled, as here, with an aged and physically weak condition of the testator, is not sufficient to establish undue influence. *Mossbarger* v. *Mossbarger's Adm'x, 230 Ky.* 230, 18 S.W.2d 997. There was no evidence of keeping the testator in seclusion, or of restriction of his contacts with his sons, such as to permit exercise of constant and undisturbed influence by the wife or to isolate him from the normal influences resulting from contact with his children.

The evidence concerning the purpose and intent of Mrs. Golladay to exercise *some* influence consisted, first, of generalities to the effect that she was a domineering and assertive type of person. Second, and of more importance, was evidence of statements made by her, to the son Bly and his wife, that she would "see that William Golladay nor any of his family ever got anything," and later statements, from time to time, that she was "working on the will." Perhaps it is of some significance that these statements were made after Bly and his wife had brought to Mrs. Golladay rumors that her husband had made a will leaving his entire estate to William or his son.

Opposing the evidence for the contestants, there are a number of facts tending strongly to sustain the validity of the will. First, is the fact that Mrs. Golladay did not participate directly in the preparation of the will, did not ever have it in her possession, and apparently never saw it. Mr. Golladay first discussed the will, in his attorney's office, in March 1953. He returned to the office and further discussed the terms of the will on two other occasions, before the day he executed the will (June 10, 1953). On none of these occasions was Mrs. Golladay present. Mr. Golladay took the will home with him, and on the day he died, called his banker to come for the will. The banker came to the farm and was taken into a room where Mr. Golladay removed the will from a locked drawer and handed it to him. The will was in a sealed envelope. Mrs. Golladay was not present during this transaction.

Another fact of some significance is that the will named the testator's bank as executor, and gave the bank sole authority to determine whether the farm should be sold after his death. The attorney who prepared the will testified that Mr. Golladay insisted on this provision.

A third fact is, that although Mrs. Golladay had for some time been trying to get Mr. Golladay to sell the farm, he had refused to do so. This is evidence that his free agency was not destroyed and that he was capable of making decisions contrary to the wishes of his wife.

We think it is of importance that a number of factors usually present in undue influence cases are absent here. They are: (1) Keeping the testator in seclusion and restricting his contacts with natural objects of his bounty; (2) participation by the beneficiary in the physical preparation of the will and possession by the beneficiary of the will; (3) absolute control by the beneficiary of the business affairs of the testator; (4) a lately developed and comparatively short period of close relationship between the testator and the beneficiary; and (5) a grossly unreasonable will.

■ In the final analysis, there is nothing of any weight to sustain the claim of undue influence other than the evidence as to Mrs. Golladay's statements that she

would see that William and his family would receive nothing, and that she was "working on the will." In considering this evidence it must be remembered that there is no competent evidence that Mr. Golladay ever intended to leave anything to his sons. Mrs. Golladay's statements do not mean necessarily that she intended to exercise *undue* influence, in the sense of exerting such forces as to overcome the testator's free agency. She was entitled to use normal persuasion and appeals to reason.

In Shelley v. Chilton's Adm'r, 236 Ky. 221, 32 S.W.2d 974, 976, where the will favored the wife's relatives over the testator's own kindred, there was evidence as to statements having been made by the wife that she desired that the estate go to one of her nephews and "she was going to see to it before she died that it was fixed in that manner." This, though coupled with evidence of opportunity of the wife to exercise influence, and that on occasions the testator had deferred to his wife's wishes, was held not sufficient to warrant submission of the case to the jury.

In Nugent v. Nugent's Executors, 281 Ky. 263, 135 S.W.2d 877, 878, there was evidence concerning a statement by one of the beneficiaries of the will, with reference to a previous will made by the testator, that "Ed will have to change that will—he will have to do different about that stock." This was held not sufficient to establish undue influence; in fact, the court said that this statement, standing alone, did not constitute even a "scintilla" of evidence.

It is our opinion that upon the whole record the contestants did not sustain the burden of proving undue influence, and therefore a verdict should have been directed in favor of the will.

■ The appellants did not move in the court below for judgment notwithstanding the verdict. Accordingly we will not direct that such a judgment be entered, but will remand the case for a new trial, with directions that if upon another trial the evidence is substantially the same, the court will direct a verdict in favor of the will.

The judgment is reversed and the case is remanded for proceedings consistent with this opinion.

SIMS, Judge (dissenting).

The opinion of the majority of the court is such a usurpation of the province of the jury and is such a far-reaching opinion that I feel constrained to dissent. As I see it, the majority opinion will put an end to contesting a will on the ground of undue influence unless such can be established by direct evidence and beyond a reasonable doubt.

The will left the entire estate to the wife, and testator's two sons, with whom he had no breach, were cut off with a mere token devise. Due to the age of testator's wife and the fact that he knew she and his two sons were never on friendly terms, this was a most unusual will. Especially so in view of the fact he expressed a wish to leave the farm to his two sons and also provide for his wife. How easy it would have been for him to have carried out this wish by leaving his estate to his wife for life, with the right of encroachment, with the remainder to his sons, had it not been for the undue influence of Mrs. Golladay.

While the will was not such as to place the burden on the wife to show there was no undue influence, all the facts surrounding the making of the will tend to show there was such influence exerted by Mrs. Golladay. Under our cases, such as McComas v. Hull, 284 Ky. 654, 145 S.W.2d 841, the declarations of the testator to the effect that his wife was attempting to exercise undue influence on him to make a will in her favor, are not substantive evidence of undue influence. Yet, they are rather strong proof that he was susceptible to his wife's undue influence when you consider the results she obtained. Add this to the statement of Mrs. Golla-

day that she would "See that William Golladay nor any of his family ever got anything," and that "She was working on the will," and you certainly have more than a scintilla of evidence of undue influence. In my judgment it was enough to take the case to the jury and sustain the verdict.

There is evidence in the record that Mrs. Golladay was a domineering woman; that testator deferred to her wishes in the operation of his farm; that she practically sent the old man to town against his wishes to make the will. The fact that she could not make this old and physically weak man sell his farm is not conclusive that she did not exercise undue influence on him to execute this will. Under this record it was plainly a question for the jury to determine whether Mrs. Golladay exerted undue influence upon her husband to make this will in her favor and cut out his two sons, and the jury found that she did.

I cannot agree with the majority of my brethren that because Mrs. Golladay did not keep her husband in seclusion and restrict his contacts with his sons; or that she did not participate in the physical preparation of the will and retain it in her custody; or did not absolutely control her husband's business affairs; or the fact that she and testator had long been married; so conclusively shows there was no evidence of undue influence exerted upon her part as to prevent the case going to the jury.

Undue influence is an insidious thing, ever difficult to prove. It is not perpetrated in one bold act in the light of day; rather it is practiced stealthily, treacherously and deceitfully. It is rare that direct evidence of undue influence is obtainable, hence courts accept circumstantial evidence of it and admit a wide range of proof. Often it must be proved by a chain of circumstances and the whole of the proof is left to the jury, who may consider testator's age, his physical and mental weakness, and the confidential relation existing between him and the beneficiary. Russell & Merritt on Kentucky Probate Practice, Vol. 1, Sec. 379, p. 262; McKinney v. Montgomery, Ky., 248 S.W.2d 719.

As undue influence is peculiarly a question for the jury, this court heretofore has been reluctant to upset the finding of that body when there is more than a scintilla of evidence to support it. Russell & Merritt on Kentucky Probate Practice, Sec. 385, p. 270; Hines v. Price, 310 Ky. 758, 221 S.W.2d 673. The law does not require undue influence to be proved beyond a reasonable doubt, or even by a preponderance of the evidence in order to get to the jury, as one reading the opinion of the majority might suppose. But if there is any substantial evidence of undue influence, the question should be submitted to the jury as the trial judge did in this instance.

The facts in the case at bar clearly distinguish it from Shelly v. Chilton's Adm'r, 236 Ky. 221, 32 S.W.2d 974 and Mossbarger v. Mossbarger's Adm'r, 230 Ky. 230, 18 S.W.2d 997, which seem to be the foundation upon which the majority opinion rests. The evidence of undue influence here is much stronger than that in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877.

For the reasons given I most respectfully dissent.