Flora **BELCHER**, Individually and as Administratrix With the Will Annexed of the Estate of May Kirk Heller, Appellant,

v.

Jean **SOMERVILLE**, Appellee.

Court of Appeals of Kentucky.

March 3, 1967.

Rehearing Denied May 5, 1967.

John C. Anggelis, Anggelis, Collis & Bunch, C. V. Collins, Collins & Collins, Lexington, for appellant.

John L. Davis and James Park, Jr., Stoll, Keenon & Park, Lexington, for appellee.

CULLEN, Commissioner.

Probate of the purported holographic will of May Kirk Heller was contested by one of

her heirs, the appellee Jean Somerville, a greatniece, on the grounds of undue influence and lack of mental capacity, and on the ground that the will was not wholly in the handwriting of the deceased. The jury found that the purported will "is not the last will and testament of May Kirk Heller," but did not indicate the ground or grounds on which the finding was made. Judgment was entered setting aside the will, from which judgment Flora Belcher, the chief beneficiary, has appealed, asserting numerous claims of error.

Mrs. Heller, a widow, was 85 years old and was confined in a nursing home when the will allegedly was written. Her heirs consisted of a brother, a nephew and a niece, and a greatniece. She had an estate of some $223,000. The will bequeathed one-half of the estate to her heirs and the other half to Mrs. Belcher, a practical nurse who had attended Mrs. Heller on the night shift for a little over two months before the will allegedly was written. The two nurses on the day shifts, who had cared for Mrs. Heller for several years, were left nothing in the will.

We shall discuss the appellant's claims of error in the sequence in which they are stated in her brief.

First is a double-barreled claim, that the evidence did not warrant submitting to the jury the issue of undue influence, and that in any event the issues of undue influence and lack of mental capacity should not have been combined in one instruction.

In our opinion there was ample, in fact almost overwhelming, evidence of undue influence. There was evidence of the following "badges" of undue influence: (1) A physically weak, mentally impaired testatrix; (2) a will unnatural in its provisions, in fact, grossly unreasonable; (3) a lately developed and comparatively short period of close relationship between the testatrix and the principal beneficiary; (4) participation by the beneficiary in the physical preparation of the will and

possession of the will by the beneficiary after its being written; (5) efforts by the beneficiary to restrict contacts by the testatrix with other persons.

Mrs. Belcher had known the testatrix only 66 days. She was not a natural object of Mrs. Heller's affection. The will allegedly was written in the middle of the night, when only Mrs. Belcher was in attendance. She immediately put the will in her safety deposit box, after checking with her banker to make sure it was in valid form. She discouraged the banker from talking with Mrs. Heller or from sending a lawyer to advise her concerning her will. The evidence strongly indicated that Mrs. Heller was very susceptible to influence in all of her actions, and in fact depended upon instructions from others even in the simplest matters, such as writing a letter. There was evidence that Mrs. Heller would indiscriminately try to give away things of value, even going so far as offering to give her wedding ring to a cleaning woman she did not know.

That the evidence of undue influence was ample is supported by Golladay v. Golladay, Ky., 287 S.W.2d 904; Hollon's Ex'r v. Graham, Ky., 280 S.W.2d 544; Roland v. Eibeck, Ky., 385 S.W.2d 37, 7 A.L.R.3d 992; McKinney v. Montgomery, Ky., 248 S.W.2d 719; Hines v. Price, 310 Ky. 758, 221 S.W.2d 673.

As concerns the combining of the issues of undue influence and lack of mental capacity in one instruction, this has long been an approved practice. See Stanley, Kentucky Instructions to Juries, Vol. 2, sec. 749. Perhaps in an unusual case where the issues were clearly unrelated, as where the lack of mental capacity consisted only of an insane delusion in one area and the alleged undue influence did not touch that area, it would be preferable to give separate instructions. However, in most cases, as in the instant one, the two issues are interrelated and one goes hand-in-hand with the other. We find no error in the instruction.

■ The appellant's second and third claims of error are that the court should have instructed the jury that there are presumptions of mental capacity and lack of undue influence. The established and (we think) proper rule is that no such instruction should be given. Bannon v. Louisville Trust Company, 150 Ky. 401, 150 S.W.2d 510; Henning v. Stevenson, 118 Ky. 318, 80 S.W. 1135.

■ The fourth claim of error is that the evidence does not support the verdict. Hereinbefore we have indicated that there was ample evidence of undue influence. Although the appellant seeks to downgrade it, there also was ample evidence that the will was not in Mrs. Heller's handwriting. A handwriting expert and several persons well acquainted with her handwriting so testified. As concerns lack of mental capacity, again the evidence was ample. Mrs. Heller's personal physician, who had attended her both shortly before and shortly after the day on which the will allegedly was written, testified that in his opinion she did not have the mental capacity to make a will. Numerous lay witnesses, including two trained nurses and the superintendent of the nursing home, several practical nurses, and some of Mrs. Heller's relatives, gave their opinions, resting upon suitable bases, that she was not mentally competent. There was evidence that Mrs. Heller on a number of occasions did not recognize her brother and did not know that he had children, although those children had in the past been dear to her; she thought a dead brother had visited her; she was unable to carry on a conversation, and responded with whistling and spurts of song to attempts of others to engage her in conversation; she said that her deceased brother in a dream had handed her a golden pen and asked her to write her will, leaving a substantial sum to Mrs. Belcher (whom the deceased brother of course had never known); she could not compose a letter; she imagined that only the middle keys on her piano would play; she tried to make gifts of valuables to strangers; she never recognized the nurses in the nursing home who attended her every day; she failed even to recognize her doctor and her long-time friends.

■ Appellant's fifth claim of error is that a banker with whom Mrs. Belcher conferred should not have been permitted to testify as to their conversations because they were privileged as communications between attorney and client. This contention rests upon the fact that the banker was qualified as an attorney in New York and Ohio. We think it is sufficient to say that he was not qualified as an attorney in Kentucky; he did not hold himself out as an attorney; and Mrs. Belcher did not go to him as an attorney but as a banker.

Appellant's final three claims of error relate to evidence and testimony concerning genuineness of handwritings. As they are somewhat interrelated we shall discuss them together.

■ During the course of testimony by the contestant's handwriting expert, which testimony was addressed primarily to the question of whether the will was in Mrs. *Heller's* handwriting, there were presented to him some samples of Mrs. *Belcher's* handwriting and he testified that *her* writing was like that in the will. Objections were made by the appellant to the admission of the samples and the testimony concerning them. These objections were predicated upon the provisions of KRS 422.120, the specific points of objection being that the samples were not qualified in advance, and were not written before the will was written. We think there are three answers to this. First, the samples were not "other handwritings of *that person*" (Mrs. *Heller*) introduced on the issue of the genuineness of her alleged handwriting in the will, so KRS 422.120 was not applicable at all. Second, the appellant *admitted* that the samples were genuine, so there was no need that they be qualified in advance. See Pulliam v. Sells, 124 Ky. 310, 99 S.W. 289. Third, the statute does not

require that the writing which is sought to be used for comparison purposes have been written before the disputed writing was written; it requires only that it have been written before *any controversy arose as to the genuineness of the disputed writing.*

■ It is our opinion that the samples were admissible for the purpose of showing that the writing in the will was Mrs. *Belcher's,* and it was proper to permit the handwriting expert to so testify.

■ The appellant's final contention is that the court erred in ruling that certain writings which Mrs. Belcher said *she saw* Mrs. Heller make were not admissible on the issue of the genuineness of the will. Under Whitcomb v. Whitcomb, Ky., 267 S.W.2d 400, this ruling was entirely correct. Furthermore, the appellant made no offer of testimony or avowal to the effect that the handwriting in the tendered writings was identical with that in the will.

The judgment is affirmed.

All concur.