Jackie AMOS and Patricia
J. Sibley, Appellants,

v.

Joyce Susan Bruce CLUBB;  Aricka
L. Bruce;  and Johnny Sibley,
Appellees.

No.  2007–CA–001181–MR.

Court of Appeals of Kentucky.

Oct. 3, 2008.

Homer Parrent, III, Louisville, KY, for appellant.

J. Key Schoen, Louisville, KY, for appellee.

Before LAMBERT, STUMBO, and THOMPSON, Judges.

## OPINION

LAMBERT, Judge.

Jackie Amos and Patricia Sibley appeal the Oldham Circuit Court's entry of summary judgment of a will contest in favor of Joyce Susan Bruce Clubb, Aricka L. Bruce, and Johnny Sibley. After careful review, we reverse and remand.

This case concerns the will and testament of Terry Clubb (hereinafter Terry), who died on March 29, 2004, after a short battle with cancer. The Appellants below were Jackie Amos (hereinafter Jackie) and Patricia Sibley (hereinafter Pat). Jackie and Pat are the legal sisters of Terry, but in fact Terry is Jackie's biological son and Pat's biological nephew. Jackie and Pat's parents adopted Terry and all circumstances were known to the various family members.

In July 2002 John Clubb died and left his estate in three equal parts to his three children, Jackie, Pat, and Terry. The primary asset in this estate was a 154 acre farm in Oldham County, Kentucky. At the time of Terry's own death in 2004, he owned the one-third interest in the farm he had inherited from his father, and this farm was the primary asset of his estate.

While it is disputed when they met exactly, Terry and appellee Joyce Susan Bruce Clubb (hereinafter Susan) started dating in 1998, and Susan moved in with Terry. In July 2000, Susan and Terry moved in with Terry's father, John, to care for him as he had been diagnosed with cancer. Susan and Terry lived with John until he passed away on July 31, 2002. Appellee Aricka Bruce (hereinafter Aricka) is Susan's daughter and lived with Terry and Susan for some time. Terry treated Aricka like a daughter and had no biological children at the time of his death.

On March 4, 2004, Terry saw his family physician regarding problems with swallowing. He was immediately referred to a gastroenterologist and was admitted to the hospital that same day. During his hospital stay, he was diagnosed with esophageal cancer. Terry died on March 29, 2004, just twenty five days after his diagnosis.

While in the hospital on March 5, 2004, Terry allegedly signed a number of documents, including one with particular relevance to this case. He requested that his sister/mother Jackie prepare several documents, including a power of attorney and one document containing his expressions about the disposition of his one-third interest in the Clubb family farm. In that document, Terry relinquishes his interest in and ownership of the farm and states that he is doing so to preserve the family farm. He instructs that his interest be equally divided between his sisters, Jackie and Patricia. Prior to summary judgment, Susan and Aricka disputed whether Terry in fact signed this document and in fact identified an expert to testify at trial regarding Terry's signature.

Marshall Dean Clubb (hereinafter Dean) was Terry's cousin and also one of his best friends. After Terry was diagnosed with cancer, Dean allegedly introduced Terry to attorney William Brammell. Terry and Mr. Brammell met for the first time in person on March 19, 2004. Mr. Brammell created two power of attorney documents and a revocation of the prior power of attorney Jackie had drafted. The new power of attorney upset Jackie and she apparently

told Terry he was no longer part of the family. Terry then met with Mr. Brammell again on March 22, 2004, to discuss Terry's will. This meeting lasted approximately one hour, and Mr. Brammell testified that Terry was aware of what he owned, who his family was, who Susan and Aricka were, and that he was able to fully and clearly articulate what his wishes were. Terry told Mr. Brammell that he and Susan were getting married, and they in fact married the following day, March 23, 2004.

On March 25, 2004, Terry met with Mr. Brammell one last time and formally signed and executed a will. Susan and Aricka were present at all the meetings with Mr. Brammell, including the last one in which they sat in the car with Terry while Mr. Brammell came out and executed the will in the car. The will in question purports to give Terry's tractor to his nephew and his horses to Aricka. The will then gives the remainder of Terry's property to Aricka and Susan in equal shares and names Aricka as the Executrix of the estate. The will makes no mention of the farm property specifically, nor does it mention Terry's sisters, Jackie and Pat.

On October 18, 2004, Jackie and Pat filed suit, alleging that Terry was mentally incompetent and unduly influenced when he executed his last will and testament on March 25, 2004, and when he married Susan on March 23, 2004. Discovery ensued and the depositions of Jackie, Pat, Susan, Aricka, Dean Clubb, William Brammell, and Terry's doctors were taken.

The various testimony from these depositions reflects that William Brammell briefly inquired as to Terry's state of mind, that none of his staff observed any mental incompetency or undue influence, and that Aricka and Susan were both present at all the meetings with attorney Brammell. Jackie and Pat point to Dean Clubb's deposition testimony, which indicated that prior to falling ill, Terry was having trouble with Susan and had indicated that he was leaving her. Dean indicated that he felt like Terry would have left sooner had Aricka not been involved. Terry also indicated to Jackie that he was going to move into one of her houses to avoid living with Susan any longer. Thus, there was some evidence of trouble in the relationship in early 2004.

Aricka and Susan claim that Terry saw various doctors during the twenty five days of his illness, none of which testified about any type of mental incompetence or undue influence in their depositions. On the other hand, Jackie and Pat claim that Terry saw Dr. Overstreet on the day he executed his will and had deteriorated to the point where he could not swallow his own saliva. At this point, Terry was receiving a hydrocodone elixir for pain and was too weak to walk into attorney Brammell's office to execute the will. Thus, Jackie and Pat argue that Terry was too weak physically and mentally to fully understand his actions when he signed and executed his last will. Jackie also testified in her deposition that after the execution of the will, she came to see Terry and his door was barred by a piece of plywood. She felt like there were other attempts to prevent her from seeing Terry, including that the locks on the house door were changed. Jackie had previously always had a key to Terry's house.

On April 12, 2007, Susan and Aricka filed a motion for summary judgment and on May 23, 2007, the trial court entered a brief order granting the motion for summary judgment and dismissing the complaint, but gave no opinion or other findings setting forth the reason for its order. Jackie and Pat now appeal.

"The standard of review on appeal of a summary judgment is whether the trial

court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996); Kentucky Rules of Civil Procedure (CR) 56.03. We are mindful that "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991).

The law surrounding undue influence is somewhat attenuated. However, Kentucky authorities hold that evidence of undue influence is almost always circumstantial in nature. *See Hanna, et al. v. Eiche, et al.,* 258 Ky. 282, 79 S.W.2d 950 (Ky. 1934); *McKinney v. Montgomery,* 248 S.W.2d 719 (Ky.1952); and *Roland v. Eibeck,* 385 S.W.2d 37 (Ky.1964).

In *Bye v. Mattingly,* 975 S.W.2d 451 (Ky.1998), the Kentucky Supreme Court stated:

> To determine whether a will reflects the wishes of the testator, the court must examine the indicia or badges of undue influence. Such badges include a physically weak and mentally impaired testator, a will which is unnatural in its provisions, a recently developed and comparatively short period of close relationship between the testator and principal beneficiary, participation by the principal beneficiary in the preparation of the will, possession of the will by the principal beneficiary after it was reduced to writing, efforts by the principal beneficiary to restrict contacts between the testator and the natural objects of his bounty, and absolute control of testator's business affairs. *Belcher v. Somerville,* Ky., 413 S.W.2d 620 (1967); *Golladay v. Golladay,* Ky., 287 S.W.2d 904, 906 (1955).

On appeal, Jackie and Pat argue that evidence of several badges of influence existed, which were significant enough to create a material issue of fact and prevent entry of summary judgment. We agree.

■ The evidence shows that Terry's cancer was very aggressive and thus that he was extremely weak at the time he executed his will; therefore, physical weakness clearly exists in this case. Susan and Aricka argue that *Bye* also requires mental impairment, and if that is the case, we agree with Jackie and Pat that the extreme pain Terry was in, combined with the levels of medication he was taking, could easily have amounted to mental impairment. Essentially, the doctors determined that nothing could be done to treat Terry and instead were trying to ease his pain with high doses of medication. We find that a jury could have found that Terry was both mentally impaired and physically weak, or that they might have found that his physical weakness alone established that he was not impaired when he executed his last will and testament. Thus, a material issue of fact existed as to Terry's physical weakness and mental impairment at the time the will was executed which precluded summary judgment.

■ Jackie and Pat also argue that there was an unnatural distribution under the will, specifically that his sisters were completely left out of the will when he had previously shown intentions of leaving the family farm to them. While it is possible that Terry was angered by Jackie's actions after he revoked his prior power of attorney, it does seem odd that he completely failed to mention his two blood relatives. This, coupled with the evidence that Terry and Susan were having trouble prior to his short illness and the execution of the will, could lead a jury to determine that the will

was unnatural, given the circumstances. Thus, another material issue of fact exists.

Jackie and Pat also point to the fact that Susan and Aricka were present during all meetings with attorney Brammell, which was supported by Brammell's testimony. While Susan and Aricka argue that Brammell properly questioned Terry about his intentions and wishes, we feel that an issue of fact exists over the significance of Susan and Aricka's presence during all meetings with Brammell. This again precludes summary judgment.

Finally, Jackie and Pat testified that their access to Terry was restricted and that Susan and Aricka, through the marriage and subsequent powers of attorney, had complete and total control over Terry's business affairs. While this is disputed by Susan and Aricka, we find that the contradicting evidence renders the issue a jury question.

Where questions exist regarding the credibility of witnesses and the weight of evidence, such matters must await trial and not be determined on motion for summary judgment. *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky.1991). We find that the credibility of Jackie, Pat, Susan, Aricka, Attorney Brammell, and Dean, and the weight of other evidence should have been addressed and evaluated by a jury. Therefore, we reverse the order of the Oldham Circuit Court granting summary judgment, and remand the matter to the Circuit Court for proceedings consistent with this opinion.

ALL CONCUR.